1    MARGARET ROSENTHAL, SBN 147501
     SABRINA L. SHADI, SBN 205405
2    JEFFREY C. BILS, SBN 301629
     **BAKER & HOSTETLER LLP**
3    11601 Wilshire Boulevard, Suite 1400
     Los Angeles, CA 90025-0509
4    Telephone: 310.820.8800
     Facsimile: 310.820.8859
5    Emails:    mrosenthal@bakerlaw.com
           sshadi@bakerlaw.com
6            jbils@bakerlaw.com

7    Attorneys for Defendants
     SYSCO CORPORATION and
8    SYSCO CENTRAL CALIFORNIA, INC.

9

10            **IN THE UNITED STATES DISTRICT COURT**

11            **SOUTHERN DISTRICT OF CALIFORNIA**

12    JOHN MARTIN, on behalf of himself     Case No.:
     and all others similarly situated, and on
13    behalf of the general public,           **REQUEST FOR JUDICIAL**
                                    **NOTICE IN SUPPORT OF**
14             Plaintiff,             **DEFENDANTS' NOTICE OF**
                                    **REMOVAL OF ACTION TO**
15        v.                           **FEDERAL COURT**

16    SYSCO CORPORATION; SYSCO      [Filed concurrently with Civil Cover
     CENTRAL CALIFORNIA, INC.; and    Sheet; Notice of Removal; Notice of
17    DOES 1-100,                        Party with Financial Interest]

18             Defendants.

19                               Action Filed:         June 7, 2016

20

21

22

23

24

25

26

27

28

*Vertical left margin:* BAKER & HOSTETLER LLP / ATTORNEYS AT LAW / LOS ANGELES

1

1    Defendants Sysco Corporation and Sysco Central California, Inc.

2   (collectively "Defendants"), by and through their attorneys, request the Court to

3   take judicial notice pursuant to Federal Rule of Evidence 201 of the following:

4       1.    Declaration of William Turley, in support of motion for final approval

5   of settlement, Document No. 34-2 filed on November 26, 2014 in *Javier Zamora v.*

6   *Ryder Logistics Integrated, Inc.,* Case No. 13-cv-02679-CAB-BGS (S.D. Cal.),

7   attached as Exhibit A.

8

9   Dated:  July 11, 2016          BAKER & HOSTETLER LLP

10

11                                 By:    */s/ Jeffrey C. Bils*
                                          MARGARET ROSENTHAL
12                                        SABRINA L. SHADI
                                          JEFFREY C. BILS
13
                                   Attorneys for Defendants SYSCO
14                                 CORPORATION and SYSCO CENTRAL
                                   CALIFORNIA, INC.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# EXHIBIT A

1  William Turley (SBN 122408)
   Email: bturley@turleylawfirm.com
2  David Mara (SBN 230498)
   Email: dmara@turleylawfirm.com
3  THE TURLEY LAW FIRM, APLC
4  625 Broadway, Suite 635
   San Diego, CA  92101
5  Telephone: +1 619 234 2833
   Facsimile: +1 619 234 4048
6
7  Attorneys for Plaintiff
   JAVIER ZAMORA
8

9              UNITED STATES DISTRICT COURT

10          SOUTHERN DISTRICT OF CALIFORNIA

11

12 JAVIER ZAMORA on behalf of himself,        Case No.:  13-cv-02679-CAB-BGS
   others similarly situated, and the general
13 public,                                    DECLARATION OF WILLIAM
                                              TURLEY
14                      Plaintiffs,

15           vs.

16                                            Hearing
   RYDER INTEGRATED LOGISTICS,                December 18, 2014
17 INC., and DOES 1 through 100,              Courtroom:    4C
                                              Judge:      Hon. Cathy Ann Bencivengo
18                      Defendants.

19

20

21
       I, WILLIAM TURLEY, declare as follows:
22

23   1. I am an attorney at law duly licensed to practice before all courts of the State of

24      California, including this District.

25
     2. I am one of the attorneys of record for the Plaintiff Javier Zamora, on behalf of
26

27      himself, others similarly situated, and the general public.

28

                                  – 1 –

3. If called to testify, I could and would competently testify as to the matters contained herein from my personal knowledge.

4. This case involves California wage and hour claims against Defendant Ryder Integrated Logistics, Inc., ("Ryder"), a distribution company with facilities and employees throughout California and beyond. The complaint was filed in California State Court by Plaintiff Javier Zamora – a former employee/driver of Ryder who received piece-rate compensation - on behalf of himself and other similarly situated current and former drivers. The essential focus of the matter is about Plaintiff's claims – and Ryder's defenses thereto - that Ryder's piece-rate pay structures do not compensate Plaintiff and the putative class of current and former drivers for all hours worked, which Plaintiff contends – and Ryder denies – violates California law. In addition, the main issues are about Plaintiff's claims – and Ryder's defenses thereto - that Ryder has uniform policies and practices that deny Plaintiff and the putative class of current and former drivers meal and rest periods under California law.

5. Plaintiff Javier Zamora is a former non-exempt driver for Ryder who received piece-rate compensation and whose employment with Ryder terminated some time in 2013. On September 27, 2013, Plaintiff filed the initial class action complaint in San Diego Superior Court on behalf of "all individuals Ryder Integrated Logistics, Inc. has employed as non-exempt Distribution Drivers in California at any time during the period of the relevant statute of limitations."

– 2 –

In the complaint, Plaintiff brought causes of action for: 1) failure to pay all wages for work performed at the statutory minimum, agreed upon rate, or otherwise (Cal. Lab. Code § 1194); 2) violations of California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*; 3) failure to pay overtime; 4) failure to provide meal periods or compensation in lieu thereof; 5) failure to provide rest periods or compensation in lieu thereof; 6) Failure to comply with itemized employee wage statement provisions; and 7) waiting time penalties. Turley Decl. ¶20.

6. On September 27, 2013, Plaintiff sent a letter to the California Labor and Workforce Development Agency ("LWDA") pursuant to Labor Code Section 2699.3(1). October 29, 2013, Plaintiff served discovery on Ryder, which consisted of 66 demands for production of documents, 82 interrogatories, and deposition notices for the persons most qualified and custodian of records to testify. On November 7, 2013, Ryder answered the complaint, denying generally each and every allegation and each purported cause of action. On that same date, Ryder also removed the matter to the Southern District on Class Action Fairness Act grounds.

7. Shortly after answering and removing, the parties met and conferred and agreed to attend an early mediation of the matter. As part of this agreement, the parties stipulated to, and requested the Court grant, the matter being stayed until the completion of the mediation. On December 4, 2013, the Court granted this joint

Declaration of William Turley

1   motion, staying the matter until April 17, 2014, which was two weeks after the

2   parties were scheduled to attend a mediation of the matter with highly regarded

3   California wage and hour mediator, Mark Rudy. Due to scheduling conflicts,

4   the mediation was rescheduled to take place on May 12, 2014, and, per the

5

6   parties' stipulation, the Court graciously extended the stay to May 27, 2014.

7

8. Although the Complaint was pleaded on behalf of all non-exempt drivers

9   employed by Ryder during the class period, Plaintiff Javier Zamora was paid on

10   a piece-rate basis. The main thrust of Plaintiff's class-wide theories of liability

11   against Ryder focused on Ryder's piece-rate pay structures failing to separately

12   compensate for all hours worked. In this sense, the initial complaint was

13

14   broader than the class of drivers Plaintiff Zamora sought to represent, as, per the

15   initial complaint's class definition, it would have included hourly employees,

16   which, again, Mr. Zamora was not. Thus, Plaintiff's discovery requests were

17   directed at discovering class-wide information and documents relating to

18

19   Ryder's piece-rate drivers and relevant wage and hour policies related thereto.

20

21   9. Prior to the matter being removed to this Court, Plaintiff propounded

22   interrogatories and demands for production of documents aimed at discovering

23   the above information. Because of the removal, Ryder did not formally respond

24   to the discovery requests. In advance of mediation, however, Ryder provided

25   Plaintiff with an informal production of information and documents that were

26

27   largely responsive to the discovery requests Plaintiff had previously

28

— 4 —

Declaration of William Turley

propounded. In particular, Defendant provided Plaintiff with information and documents relating to the size and scope of the class, piece-rate pay structures applicable to the class during the class period, relevant wage and hour policies pertaining to Ryder's California piece-rate drivers, payroll details, route details, total work-weeks Ryder's California piece-rate drivers worked in the class period, and time and wage records, a production which included thousands of documents. As part of its production, Defendant provided information about thirty-four (34) different piece-rate pay structures that were applicable to the putative class of drivers at any given time during the class period.

10. After detailed analysis of its pay structures and mass meetings and interviews with class members of Ryder's California piece-rate drivers, Plaintiff contends – and Defendant vigorously disputes – that the piece-rate pay structures do not separately compensate Plaintiff and the class for all hours worked. Defendant contends the opposite and argues that, based on the 34 pay structures, the claims are not amenable to class treatment.

11. Likewise, per document analysis and class member interviews, Plaintiff contends – and Defendant vigorously disputes - that Defendant's rest and meal period policies applicable to piece-rate paid drivers during the class period do not comply with California law.

12. Plaintiff contends that Defendant's piece-rate structures do not provide for a paid 10-minute rest period and thus violate California law. Defendant wholly

– 5 –

Declaration of William Turley

disputes Plaintiff's claims and contends the 10-minute rest period is compensated in the piece-rate structure and is factored in when deciding the particular piece-rate.

13. Plaintiff also contends that Defendant does not provide meal periods to its piece-rate drivers at all or in the amount and in the timeframes California law requires. Defendant contends it has an elaborate and documented policy and practice of ensuring Plaintiff and its California piece-rate compensated drivers have the opportunity to take meal periods. Defendant secondarily relies on its arguments that Plaintiff's meal and rest period claims will be found to be preempted under the Federal Aviation Authorization Administration Act ("FAAAA").

14. Before mediation, Defendant also provided Plaintiff with information and documents about a prior related case that settled the same claims being made here during the class period. Specifically, on July 9, 2012, the San Bernardino Superior Court granted final approval of and entered judgment in a class action settlement in a case entitled *John Rodriguez, et al. v. Ryder System, Inc. et al.*, Los Angeles Superior Court Case No. BC456322 (consolidated action with *Henry Carranza, on behalf of himself and all other similarly situated v. Scully Distribution Services, Inc. et al.*, San Bernardino Superior Court Case No. CIVDS 1017646) ("Carranza/Rodriguez Class Action Settlement Agreement"). The Carranza and Rodriguez Complaints include claims for: (1) failure to pay

– 6 –

statutorily mandated overtime wages at regular rate; (2) Failure to provide adequate meal periods or proper compensation in lieu thereof; (3) failure to provide rest periods or proper compensation in lieu thereof; (4) failure to furnish accurate itemized wage statements; (5) failure to keep accurate payroll records; (6) waiting time penalties; and (7) penalties under California Labor Code Private Attorneys General Act (PAGA).

15. The Final Approval Order and Judgment in the Carranza/Rodriguez consolidated matter certified a class of current and former employees of Ryder who worked in California as a driver at any time from December 28, 2006 through February 6, 2012, and ordered that the terms of the Settlement Agreement and Final Order "are binding on the...Plaintiff Class Members ...and that those terms have res judicata and other preclusive effect in all pending and future claims, lawsuits or other proceedings..." Accordingly, Defendant contended that the Carranza/Rodriguez Settlement Class Members (who did not timely opt-out) released all of their claims in this Action which accrued prior to February 6, 2012, and, on the basis of res judicata, there could be no liability for those individuals for workweeks that predated February 6, 2012. In other words, Defendant argued the Carranza/Rodriguez settlement and final approval order/judgment meant claims for a significant population of putative class members could not go all the way back to September 27, 2009, as Plaintiff's complaint alleged.

Declaration of William Turley

16. Thus, because of the settlement in the Carranza/Rodriguez matter, settlement discussions here had to be limited to a class defined as "all persons currently or formerly employed by Ryder as drivers in California who received any piece-rate compensation at any time between September 27, 2009, and the date of preliminary approval (08/28/14), except that the class definition shall not include drivers who terminated their employment prior to February 7, 2012 and are bound by the Carranza/Rodriguez Settlement Agreement."

17. This class definition is significantly more limited than the all-encompassing non-exempt employee definition contained in the initial complaint. As explained earlier, the initial complaint's class description captured all of Ryder's non-exempt employees, which would include hourly warehouse workers, office personnel, and hourly paid drivers. The amended class definition that was ultimately pleaded in the first amended complaint limits the scope of the class considerably. Not only does it place limits on the time period to account for the previous settlement; it limits the scope of class members to those who received piece-rate pay.

18. After thorough legal and factual investigation, class representative and class member interviews and meetings, case and mediation strategies, counsel meetings, meet and confers, document, policy, and California route analysis, damage calculations and class-wide extrapolations arrived at from voluminous informal discovery Ryder provided, the parties attended a mediation with

– 8 –

respected, California wage and hour mediator, Mark Rudy. At the end of the full day mediation, during which the negotiations were at arms-length and adversarial, with each side vigorously advocating their respective positions, the parties were able to come to general terms on a settlement, which was memorialized into a Memorandum of Understanding ("MOU"), and, later, into the more detailed Stipulation and Settlement Agreement ("Settlement Agreement") that is Attached to this Declaration as **Exhibit 1.**

19. As stated in the Settlement Agreement, which, again is attached to the Declaration of William Turley as **Exhibit 1** – and subject to the Court's approval – the parties agreed to settle this action for the gross settlement amount of $1,500,000.From the Gross Settlement Amount, the following shall be taken out subject to the Court's approval, (1) the Class Representative Payment to Zamora in an amount up to $5,000, for prosecution of the Action, risks undertaken for the payment of attorneys' fees and costs, and a general release of all claims;  (2) the Settlement Administration Costs to the Settlement Administrator, Rust Consulting, Inc., estimated not to exceed $25,000; (3) a payment of $7,500 to the California Labor Workforce Development Agency ("LWDA"); (4) the employer portion of payroll taxes (including the employer's payment of applicable FICA, FUTA, and SDI contributions, etc.) to appropriate local, state and federal taxing authorities, which the claims administrator has estimated at $96,834.77; and (5) Class Counsel Fees Payment in an amount up

Declaration of William Turley

to $375,000 (25% of the Gross Settlement Amount) for attorneys' fees and Class Counsel Litigation Expenses Payment in an amount up to $12,351.20 for litigation costs. All of these payments are subject to court approval.

20. After the above amounts are subtracted from the Gross Settlement Amount, the remaining portion of the Gross Settlement Amount - referred to as Net Settlement Amount in the Settlement Agreement – shall be available for distribution to Participating Class Members on a claims made basis. After subtracting the above amounts, the Net Settlement Amount available for class settlement shares is approximately $978,314.03.

21. In the event that less than sixty percent (60%) of the Net Settlement Amount is claimed by Class Members, the remainder of the sixty percent (60%) of the Net Settlement Amount shall be paid out to Participating Class Members; thus guaranteeing that a minimum of sixty percent (60%) of the Net Settlement Amount shall be paid to the Participating Class Members.

22. The proposed Settlement Agreement defines the settlement class to include "all persons currently or formerly employed by Ryder as drivers in California who received any piece-rate compensation at any time between September 27, 2009 and the date of preliminary approval (08/28/14), except that the class definition shall not include drivers who terminated their employment prior to February 7, 2012, and are bound by the Carranza/Rodriguez Settlement Agreement."

23. The amount allocated for each individual Participating Class Member will be

– 10 –

Declaration of William Turley

determined by multiplying the number of Qualifying Workweeks worked by each Participating Class Member who submits a valid and timely claim form by the Workweek Value.  Any unclaimed portion of the Net Settlement Amount will be retained by Ryder, subject to the 60% Floor described above.

24. The settlement has been a resounding success, with **79% of the Net Settlement Amount being claimed and the average and high Settlement Shares being $1,406 and $4,955, respectively.**

25. Pursuant to the Order Preliminarily Approving the Class Action Settlement, the Claims Administrator, Rust Consulting, Inc., mailed out 939 Court approved Notices Packets (which consisted of Class Notice, Claim Form, and Change of Address Form) to the Class on October 2, 2014. Per the Court's Order, the Class had forty-five days from the date the packets were mailed – or until November 17, 2014 - to have their claim forms, opt-out requests, or objections post-marked to Rust Consulting, Inc.

26. Of the 939 Class Notice Packets that were mailed out to the Class, 545 claim forms were received, which claimed 79 percent of the Net Settlement Fund – an amount far exceeding the 60% floor. The average settlement share is $1,406, and the highest payout at $4,955. In addition, there was only a single opt-out of the settlement class, and there were no objections from class members. For the following reasons, it is respectfully requested the Court grant final approval of the settlement:

– 11 –

27. Per the Settlement Agreement and Notice, Class Members who request to be excluded from or opt out of the settlement are not part of the settlement class and will not be bound by the settlement's terms. Here the parties and Court are faced with the paradoxical situation where the only person to opt-out of the settlement (Francisco Martinez) is the same person who objected to it. By requesting to opt-out of the settlement, however, Mr. Martinez is not a settlement class member and thus has no standing to object to the settlement. As the Notice and Settlement Agreement clearly state, The Settlement and the Court's orders thereon shall have no effect whatsoever on any claims he may have against Ryder.

28. Although the matter was stayed to accommodate the parties' intent to try an informally resolve it, substantial legal and factual investigation, voluminous informal discovery, and analysis into class certification, liability, and damage issues were undertaken prior to the parties mediating the matter on May 12, 2014. It was only after considerable time, effort, and skill was spent in evaluating the likelihood of getting the matter certified as a class action – and maintaining such status throughout the case – as well as the strength of Plaintiff's liability theory and extent and range of class recovery against the risks of not obtaining and maintaining class certification status, and the risks posed through the normal perils of litigation, including the affirmative defenses asserted by Defendant, the difficulties of complex litigation, the lengthy process

– 12 –

Declaration of William Turley

of establishing specific damages, and various possible delays and appeals, that Plaintiff was able to agree to the proposed settlement reached at an arms-length mediation.

29. Generally, the proposed settlement reached is for a gross amount of $1,500,000, which, after court approved deductions, will yield a net settlement amount available for recovery by the 939 member class of $970,665. The average settlement share per class member is estimated to be approximately **$1,406.** The following paragraphs will explain the relevant background of me, my firm, and this matter, as well as the terms of the proposed settlement and why, in light of the strengths and risks associated with proceeding with further litigation, it is fair and reasonable.

30. I am President of The Turley Law Firm, APLC and counsel of record for Plaintiff and the putative class in this matter. I am duly admitted to practice before all the courts of the state of California. The following facts are within my personal knowledge and, if called to testify, I could and would competently testify thereto.

31. I have been practicing law in California and handling employment related cases and cases under the California Labor Code since 1987.

32. I served as President of the Consumer Attorneys of San Diego.

33. I served on the board of directors of the consumer attorneys of California (CAOC) for over 10 years. Currently and for 15 years, I have been on the

Declaration of William Turley

CAOC Amicus Curiae Committee. I am listed as Amicus counsel in over twenty California Supreme Court decisions.

34. I am a frequent writer and/or lecturer. For example, along with attorney David Mara from our firm, I have had two employee lawsuit articles published by the prestigious Consumer Attorneys of California Forum Magazine within the last five years.

35. I have had legal articles published over 100 times. I have had three articles published on California Wage and Hour law.

36. I was an invited speaker at the American Conference Institute's 2011, 2012, and 2013 Wage & Hour Class Action Seminars.

37. I am co-class counsel in *Hohnbaum v. Brinker Restaurant Corp.*, San Diego Superior Court Case No. GIC834348, which was the underlying case in the California Supreme Court's recent landmark decision in *Brinker Restaurant Corporation v. Superior Court* (2012) 53 Cal.4th 1004, in which the California high Court delineated the scope of employer obligations to provide, and employee rights to receive, meal and rest periods under California law.

38. I am also Plaintiff's counsel in a host of other class actions involving violations of California's wage and hour laws in the transportation industry. For example, I have been and am involved as counsel for plaintiffs in the following class actions involving wage and hour violations under California law in the transportation industry: *Galvez v. Waste Management, Inc.* (Case No. GIC

– 14 –

Declaration of William Turley

874398); *Estrada v. Burrtec Waste Group, Inc.* (Case No. 37-2011-96268-CU-OE-CTL); *Cordova v. Republic Services, Inc.* (Case No. RG11593578); *White v. Edco Disposal Corp.* (Case No. 37-2011-00088803)-CU-OE-CTL); *Zermeno et al. v. Systems Services of America, Inc.* (Case No. 37-2012-00098643-CU-OE-CTL); *Davis v. DS Waters of America, Inc.* (Case No. 14-cv-00250 BAS (NLS); *Coria v. Recology, Inc.* (Case No. 14-cv-01536 KAW); *Young v. Amerigas Propane, Inc.* (Case No. 14-cv-583-JAH-RBB); *Kilbourne v. The Coca-Cola Company* (Case No. 14-cv-00984-MMA-NLS); *Rodriguez et al. v. Cleansource, Inc., et al.* (Case No. 14-cv-0789L DHB); *Bonner v. Knight's Pumping & Portable Services, Inc.* (Case No. S-1500-CV280623); *Verdina v. Atlas Disposal Industries, LLC* (Case No. 34-2013-00141318); *Chambers v. Ace Beverage Co.* (Case No. BC522999).

39. I have been awarded the highest rating by Avvo.com and have been awarded Super Lawyer in 2011, 2012, 2013, 2014, and 2015.

40. Pursuant to the Settlement, subject to and contingent upon the approval of this Court, the Parties have negotiated a settlement of class claims in the sum of $1,500,000 from which the following shall be deducted: (1) the Claims Administrator's charges of $25,000; (2) the Class Representative Payment to Plaintiff Javier Zamora in an amount up to $5,000 for prosecution of the Action, risks undertaken for the payment of attorneys' fees and costs, and a general release of all claims; (3) a payment of $7,500 to the California Labor

– 15 –

Declaration of William Turley

Workforce Development Agency ("LWDA"); (3) the employer portion of payroll taxes (including the employer's payment of applicable FICA, FUTA, and SDI contributions, etc.) to appropriate local, state and federal taxing authorities, which the claims administrator has estimated at $96,834.77; and (4) Class Counsel Fees Payment in an amount up to $375,000 (25% of the Gross Settlement Amount) for attorneys' fees and Class Counsel Litigation Expenses Payment in an amount up to $20,000 for litigation costs.

41. Following these Court-approved deductions the remaining sum, or the Net Settlement Amount, is estimated to be $978,314.03. Per the response of the class, 79% of those funds will be distributed to the Participating Class Members who submitted claim forms, on a proportional basis, **with the average claim estimated to be paid at $1,406 and the highest paid claim at $4,955.**

42. For the reasons stated below, each of these requests is fair, reasonable and adequate in light of the terms of the Settlement, the resounding participation rate, the size of the settlement payments, zero objections, the work performed by Class Counsel, and the substantial risks for loss undertaken by Class Counsel to accomplish this excellent result for the Class.

43. The Settlement entered into by the Parties and preliminarily approved by the Court provides that subject to Court approval, up to 25%, or $375,000 of the Maximum Settlement Amount and up to $20,000 in litigation costs would be paid to Class Counsel, respectively, as their attorneys' fees and costs. The

Parties believe that these amounts are fair and reasonable given the benefits secured by Class Counsel and given that Class Counsel has been pursuing this case for over a year purely on a contingency basis and have invested a large amount of time and resources in this legally and factually complex case.

44. The proposed Settlement was reached as a result of arm's-length negotiations that took place at and after mediation. Though cordial and professional, the settlement negotiations were, at all times, adversarial and non-collusive in nature. Following the mediation at which a Memorandum of Understanding was reached on settlement, the parties continued to negotiate at arm's length until the settlement was reached and conformed into the Stipulation of Settlement and Release Agreement that is filed herewith as **Exhibit 1**.

45. Class Counsel skillfully advanced disputed claims to obtain a favorable settlement for the class, which has resoundingly approved of the settlement in claiming 79% of the Net Settlement Amount. In light of that success, the requested award is fair and reasonable.

46. Class Counsel achieved a significant benefit for the class despite the substantial risks faced with regard to both certification and the merits of the claims. Class Counsel incurred substantial financial risk, litigating entirely on a contingency fee basis with no guarantee of recouping any fees or costs. Class Counsel had to forego other work in order to prosecute this case. Finally, the 25% attorney fee from the common fund is reasonable when cross checked by Class Counsel's

— 17 —

Declaration of William Turley

lodestar.

47. In addition, the Court should approve the requested class-representative payment in the amount of $5,000. The enhancement payment to Mr. Zamora is reasonable in light of the assistance he gave to Class Counsel throughout the case as well as the risks to his future employability he undertook by serving as a representative of his former co-workers.

48. Class Counsel has undertaken representation at their own expense, with compensation contingent on providing a benefit to the class. Class members will now substantially benefit by the terms of the settlement. Because there is a defined and clearly traceable monetary benefit to the class, the Court can base an award of attorneys' fees on the class members' benefit, using a common fund approach to compensation of counsel. Class Counsel's request for 25% of the common fund is fair compensation for obtaining an excellent result for the Class and, in doing so, undertaking complex, risky, expensive, and time-consuming litigation purely on a contingent basis.

49. For Class Counsel, the fees here were wholly contingent, and the case presented far more risk that the usual contingent fee case. There was the prospect of the enormous cost inherent in class action litigation, as well as a long battle with Defendants who had retained very experienced, reputable legal counsel. That prospect has previously become reality, in both trial courts and the Court of Appeals, and in other wage and hour class litigation. Class Counsel risked not

-- 18 --

Declaration of William Turley

only a great deal of time, but also a great deal of expense, to ensure the successful litigation of this action on behalf of all Class Members.

50. A review of class action settlements over the past 10 years shows that courts have historically awarded fees in the range of 20% to 50%, depending on the circumstances of the case. California Superior and District Court judges have adopted the percentage method for determining fee awards and in the range of that requested by Class Counsel herein or even larger. For example: *Birch v. Office Depot*, S.D. Cal. 2007, USDC, Case No. 06 CV 1690 (Hon. Dana M. Sabraw--awarding attorney's fees of 40% of $16,000,000 settlement in pre-certification meal and rest period class action); *Watson v. Raytheon Company*, USDC Southern District, Case No. CV-10-cv-00634 LAB RBB (Hon. Larry B. Burns – awarding attorneys' fees of $666,666.67, 33-1/3% of a $2,000,000 settlement in a certified misclassification class action); *Dirienzo v. Dunbar Armored, Inc.*, USDC Southern District, Case No. CV-09-2745 DMS JMA, (Hon. Dana M. Sabraw – awarding attorneys' fees of $500,000, 33-1/3% of $1,500,000 settlement in a pre-certification expense reimbursement, rest and meal period class action); *Mayville, et al. v. Kor Hotel Group, L.L.C., et al.*, USDC Central District, Case No.CV-04-8461 ABC (RCx) (Hon. Audrey B. Collins -- awarding attorneys' fees of $480,000, 30% of $1,600,000 settlement in pre-certification meal and rest period class action); *Albrecht v. Rite-Aid*, San Diego Superior Court Case No. 729298 (Hon. J. Richard Haden -- awarding

– 19 –

attorney's fees of 33% of $25,000,000 settlement in certified overtime class action); *Domino's Pizza Overtime Cases,* Orange County Superior Court Case No. JCCP 4498 (Hon. Gail A. Andler -- awarding attorneys' fees of $1,500,000, 30% of $5,000,000 settlement in pre-certification meal and rest period class action); *Wilcox v Albertsons,* San Diego Superior Court Case No. GIC833922 (Hon. Linda B. Quinn -- awarding attorneys' fees of 33% of $22,500,000 settlement in certified rest and meal class action); *Konica Minolta Wage Cases*, Orange County Superior Court Case No. J.C.C.P. 4527 (Hon. David C. Velasquez—awarding attorneys' fees of 33% of $6,000,000 settlement in pre-certification expense reimbursement class action); *Green, et al. v. Penske Logistics, L.L.C., et al.,* USDC Southern District, Case No. CV-09-0069 DMS (CAB) (Hon. Dana M. Sabraw -- awarding attorneys' fees of 33% of a $500,000 settlement in a pre-certification vacation policy class action); *Gardner v. GC Services, LP.,* USDC Southern District, Case No. 10cv0997-IEG (CAB) -- (Chief Justice Irma E. Gonzalez -- awarding attorneys' fees of 30% of a $975,000 settlement in a pre-certification failure to pay straight and overtime wages class action); *Dunn v. The Kroger Company, et al.,* Los Angeles Superior Court, Case No. BC 323252 (Hon. Elihu M. Berle -- approving attorneys' fees of 30% of a $19,500,000 in a pre-certification meal and rest break class action); *Jones v. Casual Male Retail Group, Inc.,* San Diego Superior Court, Case No. 37-2009-00089721 (Hon. Kevin A. Enright --

-- 20 --

Declaration of William Turley

approving attorneys' fees of 33% of a $299,500 in a pre-certification misclassification class action).

51. Class Counsel's request is reasonable given the circumstances and wide-ranging issues of this case, contingent nature of the action, risks undertaken for loss, legal and factual complexities involved, and stage of the litigation.

52. This case involved numerous difficult questions of law, fact, and certification issues, which required considerable effort, experience, and expertise on the part of Class Counsel to parse through and present in a cohesive and meaningful manner.

53. The liability questions in this case touched on a wide expanse of California's wage and hour laws, many of which are subject to an ever changing legal landscape, as appellate cases continually issue and refine the analysis. For instance, Plaintiffs' claims challenged Defendant's policies and pay-structures with respect to its piece-rate pay formulas, an area of law that is the subject of frequent refinement through a myriad of appellate decisions. The law governing Plaintiffs' meal and rest period class claims is equally, if not, more in flux due to the Supreme Court's recent decision in *Brinker v. Superior Court* and the voluminous progeny of appellate cases spawned in its wake. Just from a legal standpoint, Plaintiffs' liability claims demanded vigilance to the ever changing legal landscape and an expertise on how the evolving case law interacted with the issues and causes herein.

-- 21 --

Declaration of William Turley

54. In addition to the substantive liability law, Plaintiffs' claims also touched on and possibly implicated Federal laws, which invoked preemption principles into the center of the litigation.  For instance, Defendant claims Plaintiffs' overtime claims implicated the Federal Motor Carrier Exemption of the FLSA, which is expressly adopted by California Wage Order No. 9-2001. Under the Federal Motor Carrier Exemption, Defendant claimed Plaintiffs and the Class were exempt from California or Federal Overtime requirements. Defendants' also argued that Plaintiffs' meal and rest period claims were preempted under the Federal Aviation Authorization Administration Act (FAAAA). Both of these preemption claims required considerable analysis and negotiations around a wide array of federal and state cases dealing with the same issues.

55. As this case was pending, so, too, was the appeal of the Southern District's grant of summary judgment to Defendant in *Dilts v. Penske Logistics LLC* (S.D. Cal. 2011) 819 F.Supp.2d 1109, wherein the court found the FAAAA preempted and thus called for dismissal of the plaintiffs' claims for violations of California's meal and rest period laws. On July 29, 2014, the Ninth Circuit reversed the District Court's decision, finding the FAAAA did not so preempt. See *Dilts v. Penske Logistics, LLC* (9th Cir. 2014) 757 F.3d 1078, 1081 (this decision was later withdrawn and substituted by *Dilts v. Penske Logistics*, [9th Cir. 2014] U.S. App. LEXIS 17476, which held the same as the July 29, 2014 opinion.).

-- 22 --

Declaration of William Turley

56. Despite the Ninth Circuit's opinion in *Dilts*, wage and hour litigants continue to believe the issue of preemption has not been resolved and courts are considering motions to stay wage and hour class actions pending exhaustion of further appellate review of the decision. See, for example, a recent motion to stay filed by the defendant in a wage and hour class action in which our firm represents the plaintiff, attached to the this Decl. as **Exhibit 2.** Thus, despite the ruling in *Dilts*, there is the possibility that Certriori will be granted from the U.S. Supreme Court and the issue of FAAAA preemption will again be in flux until the High Court has its say.

57. The preemption issue, however, only presented the first hurdle to Plaintiff's meal and rest period claims. Defendant presented a considerable factual defense on which it primarily relied on in defending the meal and rest period claims. A defense that was made all the more formidable under the California Supreme Court's elucidation of the workplace flexibility that is built into the obligation to provide meal and rest periods.

58. In 2012, the California Supreme Court decision in *Brinker Restaurant Corp. v. Superior Court* determined the nature and scope of an employer's obligation to provide meal and rest periods. The Court repeatedly noted that the meal and rest period laws were not draconian, but were grounded in notions of flexibility to both the employer and the employee. To that end, the Court reasoned that "what will suffice [for providing meal and rest periods] may vary from industry

– 23 –

to industry, and we cannot in the context of this class certification proceeding delineate the full range of approaches that in each instance might be sufficient to satisfy the law." *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4[th] 1004, 1040. The Court further noted that "the employer is not obligated to police meal breaks and ensure no work thereafter is performed." *Id.* at 1041.

59. Ryder's meal and rest period policies Plaintiff challenged tended to reflect the open and flexible principles outlined in *Brinker*. In this regard, evidence showed Ryder hired an industrial engineer to design routes to ensure the drivers had sufficient time and space to take meal and rest periods. Consistent with the spirit of *Brinker*, Ryder did not "police" its employees to ensure they were taking meal and rest periods, but left it up to the drivers to schedule them. Finally, for each shift, Ryder presented evidence that drivers signed acknowledgments stating they had taken their meal and rest periods. Altogether, this evidence presented a meal and rest period policy that tended to share a visceral connection with *Brinker's* expansive principles underlying the duty to provide meal and rest periods.

60. Thus, the favorable decision in *Dilts* reflected a largely insignificant factor in determining the value of Plaintiff's meal and rest period claims, as it did nothing to move the factual mountain Plaintiff would have to get over to prevail on the claims.

Declaration of William Turley

61. Plaintiff's claims for unpaid time pursuant to Defendant's piece-rate pay system faced similar difficulties, which, if it weren't for Class Counsel's skill, expertise, and tenacity, would never have resulted in the matter settling for the amount in the proposed Settlement Agreement.

62. The central dispute lies in Plaintiff's class claims that Defendant's piece-rate pay structures do not compensate Plaintiff and the class for all hours worked and that Defendant fails to provide meal and rest periods to Plaintiff and the putative class in the amount and time frames required under California law. Defendant disputes these claims on both merit and class certification based grounds.

63. Significantly adding to the complexity of the matter was the fact that the driver class was not subject to one – *or even a handful* – of piece-rate pay structures. In other words, they were not all paid the same way or under the same formula. For instance, under some accounts, drivers are paid a flat rate for the load, or the trip, others are paid by the loads and stops, or via a combination of different variables. To complicate matters more, the drivers were not covered exclusively under certain of the multiple pay structures. Rather, the pay structure a driver would be paid under on any given day would depend on the customer to whom he or she was delivering. This meant, drivers could and would be paid under different wage structures in the same day and week.

– 25 –
Declaration of William Turley

64. Ryder certainly relied on the 34 different pay structures and the fact that most individual drivers were covered under multiple different pay structures to defeat certification and, if needed, liability. If it were not for the skill, sophistication, and resolve of Class Counsel, these 34 different pay structures could very well have splintered the matter into a series of mini-trials and individualized issues that would have destroyed certification and, if not, fatally confused the merits issues relating to liability.

65. Through an extensive analysis of the law respecting piece-rate pay systems in California, the 34 pay structures, and mass interviews with class member drivers, Class Counsel was able to find the common thread that Plaintiff claimed ran through each, or most, of the agreements.

66. Class Counsel reviewed each of the 34 pay structures and, instead of analyzing them for what they did compensate for, focused on the tasks for which they did not compensate. For instance, Plaintiff concluded that 33 of Ryder's 34 different piece-rate pay structures failed to separately compensate drivers for performing pre and post-trip inspections. Plaintiff also contended that 30 of 34 failed to separately pay for time spent refueling the trucks, and 29 out of the 34 did not pay for delay time per stop/layover or did not start paying delay time until the driver had been delayed at the stop/layover for at least thirty minutes. Plaintiff's extensive review also revealed, as Plaintiff claimed, that the pay

Declaration of William Turley

structures do not separately compensate for ten-minute rest periods in accordance with California law.

67. Through massive inquiries of and interviews with drivers throughout the state, Plaintiff was able to arrive at the range and average of time drivers would spend on the tasks Plaintiff claimed was uncompensated in the different pay structures. From these mass interviews, Plaintiff was able to formulate and present a cohesive and organized damage model.

68. Based on this extensive analysis, Plaintiff contended the differences in the pay structures masked their critical common features that affected all drivers in the same way. Specifically, Plaintiff contended that, regardless of what pay structure or structures they were paid under, the drivers suffered the common injury of not being compensated for all hours worked. In other words, because the class of drivers shared the legal issue, as Plaintiff framed it, of not being compensated for all hours worked, it not matter that the shared legal issue stemmed from "divergent factual predicates." *Hanlon v. Dataproducts Corp.* (9th Cir. 1992) 976 F.2d 497, 508.

69. Of Course, Defendant denied – and continues to deny – this theory of commonality and liability could withstand certification requirements or rulings on the merits. The point here is not to obscure defendant's argument or to suggest that Plaintiff's characterization of how the class is affected by common factual or legal issues rendered the claims impervious to the scrutiny of class

– 27 –

certification requirements or post-certification merits rulings. Rather, the object here is to show that, through the skill and tenacity of Class Counsel, the theories of liability were capable of proceeding in a cohesive manner, instead of being swallowed by the differences the 34 different pay structures certainly threatened to create.

70. In the end, this matter encompassed nearly every important area of California wage and hour law and required an understanding of how those laws interact and co-exist with Federal counterparts. The claims have different triggering facts and, as shown above, tended to stem from divergent factual predicates, which presented a major hurdle for Class Counsel to get over. Class Counsel's effort and expertise allowed them to evaluate Defendant's potential class liability and present a meaningful damage exposure.

71. The skill and tenacity of Class Counsel is evidenced by the size of the $1,500,000, settlement in which the average and high payouts are $1,443.83 and $4,955.18, respectively.

72. In all, the legal and factual complexities required Class Counsel to expend 505 hours on the case. Included within these hours is the anticipated 20 to 25 hours, to prepare for and attend the final approval hearing, to provide supplemental information and documentation following the filing of these motions should the Court so request, to interact with Defense counsel and the Claims Administrator with respect to funding and distributions, approval of checks, transmittal letters,

Declaration of William Turley

tax forms, respond to Class Member inquiries, handle un-cashed checks, etc. Applying Class Counsel's hourly rates to the total hours worked results in a lodestar fee of $317,550, to which Plaintiff respectfully requests the Court to apply a modest lodestar multiplier of 1.18, resulting in a total fee of $375,000.

73. Class Counsel's hourly rates are between $525 and $750 and are in line with rates approved for wage and hour class action attorneys in this jurisdiction. Hourly rates for the attorneys in my firm who worked on this case are as follows: Myself ($750) and David Mara ($525). The years of experience and hours for each attorney are shown on **Exhibit 3** and further discussed below.

74. Class Counsel's skill and experience support their hourly rates. Their practice is limited exclusively to litigation, focusing on the representation of employees in numerous wage and hour class action matters and have been appointed class counsel or co-class counsel in many of these cases.

75. Furthermore, other wage and hour attorneys working as class counsel before California courts charge comparable if not higher rates. (See **Exhibit 4**, which contains true and correct copies of the Westlaw Court Express's Legal Billing Report, Volume 14, Number 3, California Region for December 2012 and 2012 National Law Journal survey of hourly billing rates for Partners and Associates; and **Exhibit 5**, which is a Declaration of Richard M. Pearl, executed January 4, 2011 and filed in support of a fee application in *Cantu, et al. v. Pacific Bell Telephone Co.*, Case No. BC4441237, Superior Court of California, County of

Declaration of William Turley

Los Angeles, which discusses the various acceptable attorney fee rates in California.).

76. I have reviewed the time sheets reflecting the hours spent on this case by the attorneys employed by the Turley Law Firm. As stated earlier, Class Counsel at the Turley Law Firm spent a total of 505 hours representing the class in this matter. A true and correct copy of the Turley Law Firm's summary of attorney time in this case will be provided to the Court upon request.

77. I have devoted 233 hours in representing the Class in this case. The following is a summary of my tasks and activities performed in this litigation of this matter: pre-filing investigation and legal research; drafting the complaint and amended complaint; research and investigation into California's requirements for minimum wage as it relates to piece-rate pay structures, compensation for all work performed, overtime, and meal and rest periods; investigation into Defendant's pay-structures for its drivers, communicating with the class representatives; interview and meet putative class members; arrange and attend mass meetings of class members; research and analyze the extent of federal preemption under the Motor Carrier Exemption and the Federal Aviation Authorization Administration Act (FAAAA);  Drafting strategy and damage memoranda;  draft and file pleadings; draft a discovery plan for purposes of the certification motion;  draft and propound discovery;  draft living class certification motion; analyze records produced by representatives and class

– 30 –

members produced in "town-hall" stylized meetings; draft list of data needed

from Defendant in order to prepare for meaningful discussions of a class-wide

and global settlement; review, analyze and distil damage exposure models from

records Defendant produced relating to its pay-structures for drivers, total

number of drivers during the class period, and payroll records;  numerous

conferences with Defendant's counsel regarding a myriad of issues throughout

the litigation and settlement; review documents produced in prior case; review

prior settlements with Defendant that affected the scope of the class period and

identity of class members; draft mediation and damage exposure models;

participate in mediation; negotiate, draft, and re-draft stipulation and settlement

agreement; draft and re-draft the notice packet documents, discussions with

claims administrator regarding its duties; draft and re-draft preliminary

approval motion and supporting papers; review and proof Notice Packet papers

from claims administrator; review of weekly status reports from the

administrator regarding the class' participation; discussions and meetings with

class members re: the Notice Packet; conferences with defense counsel and

claims administrator re: changes of address; review and suggest revisions to

claims administrator's declaration; prepare  the motions for final approval of

the settlement and fee application and appearing at the hearing thereon.  My

hourly rate is $750. Based on my hourly rate and the total number of hours I

Declaration of William Turley

expended in this litigation, my fee is $174,750, which is reasonable and necessary.

78. David Mara, an associate at the Turley Law Firm, devoted 272 hours in representing the Class in this case. Mr. Mara has been a member of the California Bar since 2004. Mr. Mara has extensive experience in wage and hour class litigation and appellate matters relating thereto. Mr. Mara has been published on two occasions and he has been substantially involved in all phases of this litigation and the following related wage and hour class cases our firm is the attorney of record on: *Waste Management Wage and Hour Cases* (J.C.C.P. No. 4534) and is currently Plaintiffs' counsel in the following California wage and hour class actions in the transportation industry: *White v. Edco Disposal Corp.* (Case No. 37-2011-00088803-CU-OE-CTL), *Estrada v. Burrtec Waste Group, Inc.* (Case No. 37-2011-96268-CU-OE-CTL), *Cordova v. Republic Services, Inc.* (Case No. RG11593578); *Astorga v. Butterspur Cattlefeeders* (Case No. 34-2013-00147542); *Verdina v. Atlas Disposal Industries,* (Case No. 34-2013-00141318); *Rodriguez v. Cleansource, Inc.* (Case No. 37-2013-00068504-CU-OE-CTL); and *Schilling v. Trenchplate* (Case No. 37-2013-00066297-CU-OE-CTL). In addition, Mr. Mara has been involved in all aspects of the trial and appellate phases of *Hohnbaum v. Brinker Restaurant Corporation,* which is the underlying case in the California Supreme Court's

Declaration of William Turley

landmark wage and hour decision in *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4[th] 1004.

79. The following is a summary of Mr. Mara's tasks and activities performed in the litigation of this matter: pre-filing investigation and legal research; drafting the complaint and amended complaint; research and investigation into California's requirements for minimum wage as it relates to piece-rate pay structures, compensation for all work performed, overtime, and meal and rest periods; investigation into Defendant's pay-structures for its drivers, communicating with the class representatives; interview and meet putative class members; arrange and attend mass meetings of class members; research and analyze the extent of federal preemption under the Motor Carrier Exemption and the Federal Aviation Authorization Administration Act (FAAAA);   Drafting strategy and damage memoranda;  draft and file pleadings; draft a discovery plan for purposes of the certification motion; draft and propound discovery; draft living class certification motion; analyze records produced by representatives and class members produced in "town-hall" stylized meetings; draft list of data needed from Defendant in order to prepare for meaningful discussions of a class-wide and global settlement; review, analyze and distil damage exposure models from records Defendant produced relating to its pay-structures for drivers, total number of drivers during the class period, and payroll records;  numerous conferences with Defendant's counsel regarding a

– 33 –

Declaration of William Turley

myriad of issues throughout the litigation and settlement; review documents produced in prior case; review prior settlements with Defendant that affected the scope of the class period and identity of class members; draft mediation and damage exposure models; participate in mediation; negotiate, draft, and re-draft stipulation and settlement agreement; draft and re-draft the notice packet documents, discussions with claims administrator regarding its duties; draft and re-draft preliminary approval motion and supporting papers; review and proof Notice Packet papers from claims administrator; review of weekly status reports from the administrator regarding the class' participation; discussions and meetings with class members re: the Notice Packet; conferences with defense counsel and claims administrator re: changes of address; review and suggest revisions to claims administrator's declaration; prepare the motions for final approval of the settlement and fee application and appearing at the hearing thereon. Mr. Mara's hourly rate is $525. Based on Mr. Mara's hourly rate and the number of hours he expended, Mr. Mara's fee is $142,800, which is reasonable and necessary.

80. All of the tasks and work performed were reasonable and necessary to the prosecution of this case and justified, particularly in light of the result achieved.

81. A lodestar should be enhanced by the contingent nature of counsel's fee recovery. In counsel's experience, the risks of prosecuting a class action case

-- 34 --

Declaration of William Turley

such as this are significant. Class Counsel has expended substantial time in the prosecution of this litigation without any direct compensation and have advanced litigation costs on a contingency basis, carrying the risk that this time and the out-of-pocket costs would be lost if the case were not resolved successfully. And there were plenty of risks that the matter might not be successful for Plaintiffs.

82. Had the case proceeded to trial, the time and the costs would have increased exponentially. The potential impact of the recent decision, *Wal-Mart Stores, Inc. v. Dukes* (2011) --- U.S. ---, 131 S. Ct. 2541, 2551, was certain to generate further litigation and perhaps appeals lasting long before the matter would ever proceed to trial, not to mention the outcome of Defendant's motion to compel arbitration, which could have precluded recovery in this Court altogether. Thus, the "take-nothing" risk here created by the contingent nature of the fee was substantial.

83. As a small firm, Class Counsel can only properly litigate a limited number of cases at one time. The professional demands of this case were significant, requiring 505 hours of attorney time. Class Counsel was necessarily precluded from working on other cases while working on this case. The Court should also consider this factor in enhancing the lodestar.

84. If class members paid the fees that the market would bear, they would likely pay a fee of ranging from 33- 1/3% to 40% of any recovery.

-- 35 --

Declaration of William Turley

85. Class Counsel seeks reimbursement of their actual litigation costs and expenses in the sum of $12,351.20.  These costs were all reasonable and necessary to the prosecution of this case, and are fair and reasonable and unopposed by Defendants.  A true and correct copy of The Turley Law Firm's itemized costs are attached hereto as **Exhibit 6.**

86. The Settlement Agreement provides for an enhancement payment to the appointed Class Representative in the amount of $5,000.   The requested enhancement is appropriate and reasonable and unopposed by Defendants.   In support of his enhancement request, Plaintiff Zamora has submitted a declaration detailing the efforts he expended on behalf of the class in order to advance this case to its successful conclusion. There is no question that this case would not have reached the same result but for Mr. Zamora's involvement and input at all stages of the litigation.

87. As representative for the absent class members, Mr. Zamora risked a potential judgment taken against him for attorneys' fees and costs if this matter had not been successfully concluded.  Though the fee agreement provides that Class Counsel would pay such costs, Mr. Zamora would nevertheless have had a cost bill entered against him leaving him ultimately liable for potentially hundreds of thousands of dollars in the unexpected possibility that Class Counsel did not meet their obligation to cover those costs.

Declaration of William Turley

88. Unfortunately, there have been several judgments entered against Class Representatives, e.g. *Koehl v. Verio, Inc.* (2006)142 Cal.App.4th 1313, 1328 (a wage and hour class action where Defendant prevailed at trial, the named Plaintiffs were held liable, jointly and severally for the Defendant's attorneys' fees); and *Whiteway v. Fedex Kinkos Office & Print Services, Inc.*, (N.D. Cal. 2007) 2007 U.S. Dist. LEXIS 95398, (a wage and hour misclassification case lost on summary judgment, after the case was certified, the Named Plaintiff was assessed costs in the sum of $56,788.)    The risk of payment of Defendants' costs, in itself alone, is a sufficient basis for an award of the requested enhancement sum.  Few individuals are willing to take this risk, and it is clear that the appointed Class Representative here championed a cause on behalf of others with potentially huge monetary risks.

89. Additionally, it is common knowledge that the modern day work force is quite mobile, with employees holding several jobs in a career during their lifetime. It is also true that prospective employers in this computer, high-tech age "Google" and/or do extensive background checks and have access to Court databases to see if applicants have ever filed a lawsuit or have ever been sued. Here, Mr. Zamora cost his former employer a substantial sum of money by his courage to step forward to vindicate not only his own rights but also, those of the similarly situated individuals, all of whom will now receive substantial payments due to the initiation of this action.  Such conduct will not be lost on a

— 37 —

Declaration of William Turley

prospective employer who has to choose between an applicant who has never sued an employer and one who has done so. The requested enhancement far from compensates Mr. Zamora for opportunities he may lose in the future because of the exercise of a Constitutional right to Petition the Courts for redress of a grievance.

90. The enhancement request is modest for the work performed, risks undertaken for payment of fees and costs if this case had not been successfully concluded, stigma on future employment opportunities, and the benefits all members of the Class as well as all current and future class members will enjoy as a result of Mr. Zamora's efforts. Furthermore, the requested payment to Mr. Zamora was clearly stated in the class Notice and not one Class Member objected to it.

91. The Parties agreed to hire Rust Consulting, Inc. ("Rust") to be the Claims Administrator, a choice the Court approved in conjunction with granting Preliminary Approval. The Settlement Administrator was responsible for mailing the Notice Packets to the Class in both English and Spanish, obtaining better addresses for undeliverable Notice Packets, responding to Class Member inquiries, providing weekly status reports, receiving all communications from the Class, and providing its declaration documenting its duties and responsibilities to ensure the Class was given notice of the Settlement.

92. Following the grant of final approval, Rust will continue to calculate the payments to Participating Class Members, calculate the withholding taxes, and

Declaration of William Turley

transmit to the appropriate government agencies, draft and transmittal letters together with the Settlement Payments to Participating Class Members, distribute other payments ordered by the Court, follow up with un-cashed checks, and perform such other duties as described in the Settlement Agreement. Rust's cost and fee of $25,000 for services rendered and to be rendered are fair and reasonable and should be granted.

93. In its Removal papers, Ryder calculated its potential and combined exposure for meal period and rest period violations to be $4,399,380. Ryder's removal papers calculated its potential exposure to plaintiff's claims for failing to compensate for all hours worked at the statutory minimum wage at $917,640. Thus, Ryder estimated its total estimated potential exposure for meal and rest periods and failure to compensate claims at $5,317,020.

94. Based on the records related to workweeks during the class period, wage and time records, and communications from Plaintiff and many putative Ryder drivers throughout the state as to the tasks they perform for which they feel they are not compensated, Plaintiff's exposure calculations for these claims at the time of mediation were similar to Ryder's removal estimations.

95. In preparation for mediation, Ryder provided information relating to, among other things, the total qualifying workweeks from September 27, 2009, to March 28, 2014. That is, the total work weeks all class members worked, excluding those weeks released under the Carranza/Rodriguez settlement, from

Declaration of William Turley

September 27, 2009, to March 28, 2014. Per that data, the 900 class members worked an approximate total of 34,903 qualifying workweeks, or approximately 174,515 workdays.

96. Defendant also provided data from which Plaintiff could calculate an average hourly rate. From that data, Plaintiff estimated the average hourly rate to be $19.52/hour, which Defendant vigorously contests.

97. From Plaintiff's interviews of drivers, Plaintiff averaged that drivers worked an average of .667 hours per day performing pre and post trip inspections on their trucks for which they claim they claim, under 33 of the 34, or 97% of the pay structures, they were not compensated. Plaintiff thus calculated exposure for pre and post trips as follows: .667 hrs/dayx$19.52/hr x 174,515 days x .97 = $2,203,992.

98. Calculating one rest period violation and one meal period violation per day, which, under California Labor Code section 226.7, Plaintiff claimed one hours' worth of pay was owed for each violation, Plaintiff estimated the total exposure for meal and rest period violations as follows: 2 x $19.52/hour x 174,515 days = $6,813,065. Defendant vigorously denies these calculations in all aspects and, for reasons explained herein, on all liability premises on which Plaintiff bases them.

///

///

Declaration of William Turley

99. Defendant vigorously denies these calculations in all aspects and, for reasons explained herein, on all liability premises on which Plaintiff bases them.

I swear under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Dated:  November 26, 2014          THE TURLEY LAW FIRM, APLC


By: /s William Turley
    William Turley
    Attorneys for Plaintiff
    JAVIER ZAMORA

Declaration of William Turley

1

## PROOF OF SERVICE

2  I, S. Suzuki, declare:

3  I am employed in Los Angeles County, California. I am over the age of
eighteen years and not a party to the within-entitled action. My business address is
4  11601 Wilshire Boulevard, Suite 1400, Los Angeles, CA 90025-0509. On July 11,
5  2016, I served a copy of the within document(s): **REQUEST FOR JUDICIAL**
**NOTICE IN SUPPORT OF DEFENDANTS' NOTICE OF REMOVAL OF**
6  **ACTION TO FEDERAL COURT**

7

8  ☑  by placing the document(s) listed above in a sealed envelope
with postage thereon fully prepaid, in the United States mail at
9  Los Angeles, California addressed as set forth below.

10  ☐  by electronic mail by the U.S. District Court CM/ECF – Live
System to the email address(es) set forth below.
11

12  ☐  by placing the document(s) listed above in a sealed envelope
and affixing a pre-paid air bill, and causing the envelope to be
delivered to a [service company] agent for delivery.
13

14  William Turley
David Mara
Jill Vecchi
15  **THE TURLEY LAW FIRM, APLC**
7428 Trade Street
16  San Diego, CA 92121
(619) 234-2833
17  (619) 234-4048
bturley@turleylawfirm.com;
18  dmara@turleylawfirm.com
jvecchi@turleylawfirm.com
19

20  I am readily familiar with the firm's practice of collection and processing
correspondence for mailing. Under that practice it would be deposited with the
21  U.S. Postal Service on that same day with postage thereon fully prepaid in the
ordinary course of business. I am aware that on motion of the party served, service
22  is presumed invalid if postal cancellation date or postage meter date is more than
one day after date of deposit for mailing in affidavit.
23

24  I declare under penalty of perjury under the laws of the United States of
America that the above is true and correct. Executed on July 11, 2016, at Los
25  Angeles, California.

26

27  _____
S. Suzuki
28

609107845.1

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES