UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MARTIN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SYSCO CORPORATION and SYSCO CENTRAL CALIFORNIA, INC.,<br><br>Defendants. | No. 1:16-cv-00990-DAD-SAB<br><br><br>ORDER GRANTING IN PART MOTION FOR CLASS CERTIFICATION<br><br>(Doc. No. 37) |

This is an employment class action brought by plaintiff on behalf of himself and the putative class members—all of whom are employed as truck drivers for defendants—alleging that they were not provided meal and rest breaks in accordance with California law. Plaintiff filed a motion for class certification on December 18, 2017. (Doc. No. 37.) Defendants opposed the motion on January 15, 2018 and plaintiff filed a reply on January 29, 2018. (Doc. Nos. 38, 40.) The court heard oral argument on this matter on February 6, 2018. Attorney David Mara appeared on behalf of plaintiff and the putative class while attorneys Sabrina Shadi and Nicholas Poper appeared on behalf of defendants. For the reasons discussed below, the court will grant plaintiff's motion in part.

/////

/////

**BACKGROUND**

Plaintiff and the putative class members here are non-exempt, hourly truck drivers employed by defendants in California. (Doc. No. 1-1 at 2.) Plaintiff alleges a number of claims against defendants, including that they: (1) required class members to work for more than five hours without a meal period; (2) failed to provide a second meal period to class members whose shifts lasted more than ten hours; (3) required class members to work more than four hours without a rest period; and (4) failed to provide accurate itemized wage statements.[1] (*Id.* at 1–46.)

The class claims pursued by plaintiff in this matter follow two distinct theories. First, plaintiff claims that defendants' policies facially violate California law. Second, plaintiff asserts that class members were given a daily, preset route which dictated the order of the deliveries they were to make and, more importantly, set the number of stops that each driver needed to complete prior to taking a meal or rest break. Under this theory, plaintiff argues that class members were required to abide by this schedule and could not take breaks prior to the completion of a certain number of deliveries. Because the length of time required to complete these deliveries varied, class members were frequently unable to take meal and rest breaks as required by California law.

Plaintiff seeks certification of one main class and four subclasses in order to pursue claims related to the alleged rest break and meal period violations under state labor law:

> **Main Class**: All hourly drivers who are or were employed by Sysco at any time from June 7, 2012, to the date the Court issues an order granting class certification.
>
> **Rest Break Subclass**: All hourly drivers who are or were employed by Sysco and worked a shift over ten (10) hours at any time from June 7, 2012, to the date the Court issues an order granting class certification.
>
> **First Meal Period Subclass**: All hourly drivers who are or were employed by Sysco who worked a shift over five (5) hours at any time from June 7, 2012, to the date the Court issues an order granting class certification, where the corresponding e-time records show no 30-minute meal period or show a 30-minute meal period after the 5th hour.

---

[1] It appears plaintiff has elected not to seek certification of certain claims, including allegations that class members were not sufficiently compensated for overtime hours worked because of defendants' rounding policy. (*See* Doc. No. 1-1 at 30–33.)

> **Second Meal Period Subclass**: All hourly drivers who are or were employed by Sysco who worked a shift over ten (10) hours at any time from June 7, 2012, to the date the Court issues an order granting class certification, where the corresponding e-time records show a second 30-minute meal period after the tenth hour, if at all.
>
> **Waiting Time Penalties Subclass**: All hourly drivers who ended their employment with Sysco at any time from June 7, 2013, to the date the Court issues an order granting class certification.

(Doc. No. 37-1 at 7–8.)

## LEGAL STANDARD

The class action is a procedural mechanism whereby the "usual rule that litigation be conducted by and on behalf of the named parties only" is swept aside so that multiple parties—unwieldy in number but possessing similar or identical claims—may pursue common redress in an efficient and economical manner. *Comcast v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011)); *see also Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 963–64 (9th Cir. 2013). Federal Rule of Civil Procedure 23 controls class certification and imposes a two-step process in deciding whether a class may be certified.

Rule 23(a) requires the moving party to demonstrate the existence of four prerequisites in order for the court to consider whether certification is proper. These prerequisites are often described as: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. If—and only if—a putative class satisfies these four requirements may it then proceed to show it also satisfies one of the three subsections of Rule 23(b). The party seeking class certification bears the burden of establishing conformity with these requirements, and must do so by producing facts "affirmatively demonstrat[ing]" that certification is warranted. *Comcast*, 569 U.S. at 33; *Dukes*, 564 U.S. at 350. A court must review the merits of a party's substantive claim to the extent that they overlap with issues touching on class certification. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (citing *Dukes*, 564 U.S. at 350–51 and *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992)); *see also Blair v. The CBE Grp., Inc.*, 309 F.R.D. 621, 625 (S.D. Cal. 2015). Only after it has conducted a "rigorous analysis" of these facts and determined they show "actual, [and] not presumed, conformance" with Rule 23(a) and (b), may a district court certify a class. *Ellis*, 657 F.3d at 981 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457

U.S. 147, 160, 161, (1982)); *see also Comcast*, 569 U.S. at 33–34 (extending the "rigorous analysis" requirement to Rule 23(b)); *Patel v. Nike Retail Servs., Inc.*, Case No. 14-cv-4781-RS, 2016 WL 1241777, at *3 (N.D. Cal. Mar. 29, 2016) ("This 'rigorous' analysis applies both to Rule 23(a) and Rule 23(b)."). If a court does decide to certify a class, it must define the class claims and issues and appoint class counsel. Fed. R. Civ. P. 23(c)(1), (g). Finally, "[w]hen appropriate, a class may be divided into subclasses that are each treated as a class under this rule." Fed. R. Civ. P. 23(c)(5).

### A. Rule 23(a) Requirements

In order for a class member to sue as a representative of all class members, the class member must establish the following prerequisites: (1) the class must be "so numerous that joinder of all members is impracticable"; (2) there must be "questions of law or fact common to the class"; (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

#### 1. Numerosity

A proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While there is no strict number requirement for numerosity, courts have routinely held that classes comprised of more than forty members will satisfy this prerequisite. *See Ikonen v. Hartz Mt. Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) ("As a general rule, classes of 20 are too small, classes of 20–40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough."); *see also Dunakin v. Quigley*, 99 F. Supp. 3d 1297, 1327 (W.D. Wash. 2015) ("Generally, 40 or more members will satisfy the numerosity requirement.") (quoting *Garrison v. Asotin County*, 251 F.R.D. 566, 569 (E.D. Wash. 2008); *McMillon v. Hawaii*, 261 F.R.D. 536, 542 (D. Haw. 2009).

#### 2. Commonality

Rule 23 requires there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy Rule 23(a)'s commonality requirement, a class claim "must depend upon a common contention . . . of such a nature that it is capable of class[-]wide resolution—which

means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. As the Supreme Court further explained, this frequently necessitates an inquiry that "overlap[s] with the merits of plaintiff's underlying claim." *Id.* at 351.

### 3. Typicality

"[T]he claims or defenses of the representative parties [must be] typical of the claims and defenses of the class." Fed. R. Civ. P. 23(a)(3). They need not be clones; rather, all that is required is that the claims or defenses be "reasonably co-extensive." *Hanlon*, 150 F.3d at 1020 (noting that this standard is a "permissive" one and requires only that the claims of the class representatives be "reasonably co-extensive with those of absent class members; they need not be substantially identical"). Typicality is satisfied if the representative's claims arise from the same course of conduct as the class claims and are based on the same legal theory. *See, e.g., Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (claims are typical where named plaintiffs have the same claims as other members of the class and are not subject to unique defenses). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon*, 976 F.2d at 508.

### 4. Adequacy of Representation

Plaintiffs seeking class certification must show that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Ellis*, 657 F.3d at 985 (quoting *Hanlon*, 150 F.3d at 1020)); s*ee also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015). "An absence of material conflicts of interest between the named plaintiffs and their counsel with other class members is central to adequacy and, in turn, to due process for absent members of the class." *Rodriguez v. W. Publ'g Co.*, 563 F.3d 948, 959 (9th Cir. 2009) (citing *Hanlon*, 150 F.3d at 1020). Accordingly, "[c]lass

certification will be inappropriate if fundamental conflicts of interest are determined to exist among the proposed class members." *Allied Orthopedic v. Tyco Healthcare Grp.*, 247 F.R.D. 156, 177 (C.D. Cal. 2007). Generally, the adequacy inquiry seeks to ensure that the class representative is "part of the class and [that he] possess[es] the same interest and injury as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997).

  C. *Rule 23(b) Requirements*

  Once the prerequisites of Rule 23(a) are met, the court must certify the class under one of the Rule 23(b) categories. Certification under Rule 23(b)(3) is permitted when "the questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is [deemed to be] superior to other available methods for fairly and efficiently adjudicating the controversy." *Dukes*, 564 U.S. at 362 (quoting Fed. R. Civ. P. 23(b)(3)); *see also Tyson Foods, Inc. v. Bouaphakeo*, ___U.S. ___, ____, 136 S. Ct. 1036, 1045 (2016) ("An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'") (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–97 (5th ed. 2012)). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," *Amchem*, 521 U.S. at 622, whereas the superiority requirement demands courts "assess the relative advantages of alternative procedures for handling the total controversy" in order to determine that "a class action is the 'superior' method of resolution." Fed. R. Civ. P. 23(b)(3) advisory comm. note; *see also Pointer v. Bank of Am. Nat'l Ass'n*, No. 2:14-cv-0525-KJM-CKD, 2016 WL 696582, at *8 (E.D. Cal. Feb. 22, 2016). While the predominance requirement is similar to the Rule 23(a)(2) commonality requirement, the standard is much higher at this stage of the analysis. *Dukes*, 564 U.S. at 359; *Amchem*, 521 U.S. at 624–25; *Hanlon*, 150 F.3d at 1022. Ultimately, "[t]he predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc.*, 136 S. Ct. at 1045 (quoting Newberg, § 4:49, at 195–96).

Rule 23 provides that, aside from predominance, a court must find that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The rule lists four metrics pertinent to superiority, including class members' interests in individually controlling litigation, whether any litigation has already been filed by putative class members, the desirability of concentrating the litigation in a class action, and the "likely difficulties in managing a class action." *Id.* The Ninth Circuit has recognized a "well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns," but rather should look to "manageability as one component of the superiority inquiry." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017) (quoting *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 663 (7th Cir. 2015)).

## ANALYSIS

The parties here do not contest numerous aspects of class certification, including numerosity, typicality, or adequacy of representation under Rule 23(a), and superiority under Rule 23(b)(3).[2] (Doc. No. 38.) Regardless of whether the parties contest an element of certification, the court has an independent duty to ensure that class certification is appropriate in a given case. *See In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 268 F.R.D. 652, 660 (S.D. Cal. 2010). Therefore, the court will briefly examine each of the uncontested areas of certification.

**A.  Uncontested Aspects of Class Certification**

Consideration of each of the following requirements in the context of this action supports class certification here.

1. *Numerosity*

In this case, the proposed class contains 151 class members as of October 26, 2017. (Doc. No. 37-2 at 64.) This is sufficient to make joinder of all class members as plaintiffs impracticable.

/////

/////

---

[2] Moreover, because both theories of liability proposed by plaintiff apply equally to all of the proposed subclasses, the question of whether each can be certified is likewise the same.

2.    *Typicality*

Plaintiff states in his declaration that he worked as a driver at Sysco Central California, Inc. from September 2005 to March 2014, and typically worked more than ten hours in a shift. (Doc. No. 37-3 at ¶¶ 3, 5.) Plaintiff declares he received a printed manifest for each shift he worked, which was uploaded to the computer on his truck. (*Id.* at ¶ 9.) He was required to follow the order of deliveries as they appeared and the route on the computer dictated to deliveries he would make as well as when he would take his lunch and rest breaks. (*Id.*) Further, plaintiff says that defendant provided him a policy handbook which noted that he would get only two rest breaks per shift, no matter how many hours he worked. (*Id.* at ¶ 11.) It is clear that plaintiff's claims will be typical of those of the class members, who raise claims based on a failure to appropriately provide meal and rest break periods in accordance with state law.

3.    *Adequacy of Representation*

In his declaration, plaintiff states that he is "completely dedicated to this case," and will work with his attorneys to achieve the "best outcome possible for the class." (Doc. No. 37-3 at ¶ 8.) He also states that he is "dedicated, ready, willing, and able to see [this case] throughout to the very end." (*Id.*) Plaintiff notes that he sat for a deposition in this case in December 2017, and that he regularly participates in the matter by talking with his attorneys over the phone and supplying them with information as needed. (*Id.* at ¶¶ 6–7.)

Meanwhile, plaintiff's counsel William Turley provides a declaration setting out his qualifications to serve as class counsel. Attorney Turley notes that he has handled employment law cases since 1987, and lists more than 100 class actions in which he has served as counsel for plaintiffs. (Doc. No. 37-2 at 2–6.) Mr. Turley also lists additional accolades showing him to be an accomplished litigator. (*Id.*) In addition, his declaration sets out the qualifications of his colleagues David Mara, Jill Vecchi, and Matthew Crawford, each of whom practice labor law and have served as counsel for the plaintiffs in numerous class actions. (*Id.* at 6–12.) Both the named plaintiff and class counsel are adequate to represent the class.

/////

/////

####	4.	Superiority

Rule 23 provides that, aside from predominance, a court must find that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, there is no contention that class members would be interested in controlling their own litigation, nor has any party advised the court of other pending litigation filed by putative class members concerning these issues. It is desirable to concentrate this litigation in a class action, given that much of the same evidence would be involved in each claim and that the amounts in question are relatively small. Therefore, to the extent that commonality and superiority are met, as discussed below, the court concludes that a class action is a superior method for adjudicating this case.

### B.    Contested Aspects of Class Certification

The chief areas of dispute between the parties are whether the commonality and predominance inquiries are met. As referenced above, plaintiff has two distinct theories of liability which apply equally to each of the subclasses: (1) that the policies related to rest and meal breaks are facially invalid; and (2) that the route manifests dictate when class members may take rest and meal breaks, and that, given this, class members were regularly not provided rest and meal breaks in compliance with California law.

####	1.	Facial Invalidity of the Rest and Meal Break Policies

Wage Order 9-2001, codified at 8 California Code of Regulations § 11090, states:

> (A) Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.

The California Supreme Court has interpreted this regulation to mean that "[e]mployees are entitled to 10 minutes' rest for shifts from three and one-half to six hours in length, 20 minutes for shifts of more than six hours up to 10 hours, 30 minutes for shifts of more than 10 hours up to 14 hours, and so on." *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1029 (2012). The

9

central question where these types of claims have been certified is not whether the employees actually took rest breaks, but rather whether the employer's policy authorized and permitted rest breaks in accordance with California law. *See id.* at 1033 ("No issue of waiver ever arises for a rest break that was required by law but never authorized; if a break is not authorized, an employee has no opportunity to decline to take it."); *Aldapa v. Fowler Packing Co.*, No. 1:15-cv-00420-DAD-SAB, 2018 WL 534039, at *13–15 (E.D. Cal. Jan. 24, 2018) (finding commonality was met because the question of "whether defendants maintained a lawful rest period policy and appropriately made rest period payments under California law is common to this subclass"); *Cleveland v. Groceryworks.com, LLC*, 200 F. Supp. 3d 924, 953 (N.D. Cal. 2016) (noting California law "requires employers to make rest breaks available, but does not require employers to ensure that employees actually take their rest periods"); *Amaro v. Gerawan Farming, Inc.*, No. 1:14-cv-00147-DAD-SAB, 2016 WL 3924400, at *10 (E.D. Cal. May 20, 2016) (approving class certification and noting that the class claim concerned "a question determined solely by the actions of the employer and not those of the employee").

Concerning meal breaks, California law provides:

> An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

Cal. Labor Code § 512(a); *see also* 8 Cal. Code Regs. § 11090(11). "[A]bsent waiver, [§] 512 requires a first meal period no later than the end of an employee's fifth hour of work, and a second meal period no later than the end of an employee's 10th hour of work." *Brinker*, 53 Cal. 4th at 1041.

Plaintiff's first theory of liability for these subclasses is that the policies themselves are facially invalid and therefore subject defendant to liability. (Doc. No. 37-1 at 15–16; Doc. No. 40

at 3.) It appears that plaintiff's claim that the rest period policy is facially invalid is based upon the contention that California law requires three 10-minute rest periods for employees working more than 10 hours, rather than two 15-minute rest periods. (Doc. No. 40 at 3.) Meanwhile, plaintiff argues the meal period policy is facially invalid because it does not provide for class members to receive meal breaks *before* the end of the fifth and tenth hours. (*See* Doc. No. 40 at 3.) Whether these theories of liability succeed will turn entirely on two inquiries: (1) what defendants' policies were; and (2) whether those policies complied with California law. Plaintiff produces evidence that defendants provide a handbook to the class members that sets out these policies. (Doc. No. 37-2 at 36–37) (Deposition of Trohn Josserand, Vice President of Operations) ("Josserand Depo."). He also supplies a copy of the handbook, which states defendants' meal and rest break policy as follows:

**Meal Periods:**

> Hourly Sysco Associates are provided a thirty (30) minute unpaid, off-duty meal period for every work period of more than five hours, and two paid fifteen-minute breaks; the first 15-minute break is provided during the first half of the day, and the second break during the second half. Break time cannot be used to make up time. No manager or supervisor has the authority to deny your right to take a meal break.

(Doc. No. 37-2 at 97.)

Defendants oppose certification under this theory because they maintain their policies are lawful. (*See* Doc. No. 38 at 14–16.) They also suggest that the policy stated in their employee handbook are not, in fact, the company's meal and rest break policies. (*See id.* at 14) ("Plaintiff conveniently ignores Sysco Central Cal.'s written meal period policies contained in the Meal Period and Rest Break Policy and Meal/Break Recording Form, and instead relies solely on a 2013 Employee Handbook."). Neither of these arguments provides a basis not to certify the proposed classes, since both arguments concern the merits of the claims and are readily resolvable across all class members. *See Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1166 n.5 (9th Cir. 2014) (observing that considerations of the merits are not relevant to whether class certification should be granted); *Antemate v. Estenson Logistics, LLC*, No. CV 14–5255 DSF (RZx), 2015 WL 3822267, at *2 n.2 (C.D. Cal. June 15, 2015) (noting a claim that a rest break policy was facially

11

invalid was "susceptible to classwide proof and analysis"); *In re Taco Bell Wage and Hour Actions*, No. 1:07cv1314 LJO DLB, 2012 WL 5932833, at *8 (E.D. Cal. Nov. 27, 2012), *findings and recommendations adopted*, 2013 WL 28074 (concluding that a theory of liability focused on an "allegedly facially invalid meal break policy" satisfied the predominance element). Consideration of defendant's two arguments does not require examination of individualized issues. Therefore, there are common issues of both law and fact that will resolve the issue of liability for this subclass, and those common issues predominate over any individual issues for this theory of liability.

### 2. Route Manifests Theory of Liability

Plaintiff's other theory of liability for both the meal and rest break subclasses is more complex. Plaintiff claims that the route manifests provided to class members at the start of their workday pre-set the sequence of stops, and include slots for their rest and meal breaks within the manifest between certain stops. (*See* Doc. No. 37-1 at 8–12; Doc. No. 40 at 5–9.) According to plaintiff, class members are required to follow the sequence of the route manifest, and therefore must take the rest and meal breaks after the requisite number of stops has been completed, as indicated in the route manifest. (Doc. No. 37-1 at 18.) According to plaintiff, even if the time estimates in the manifest were accurate, these meal periods are often scheduled after more than the amount of time permitted under California law has elapsed. (*Id.*) Furthermore, the route manifests frequently underestimate the amount of time required to complete the deliveries. (*Id.*) The result, according to plaintiff, is that class members frequently do not receive legally-compliant rest or meal breaks. (*Id.*) Defendants, meanwhile, assert that these manifests are not mandatory, and any depiction of rest or meal breaks on them is not a requirement that the class members take their breaks at those times or between the stops depicted. (Doc. No. 38 at 10–13.) The question of whether the claims can be certified under this theory of liability advanced by plaintiff therefore hinges on whether there is sufficient evidence demonstrating that the order of the stops on the route manifests is a mandatory sequence that class members must follow. If the manifests are not mandatory, then there is no company-wide policy or practice at issue, and whether a particular driver was denied meal and rest breaks would turn on evidence specific to

12

that individual.³

Plaintiff provides evidence of the following. A manifest is provided to the drivers both in printed and electronic form. (Doc. No. 37-2 at 30–31) (Josserand Depo.). That manifest is programmed into a device or system known as Telogis, which both tracks the driver's movements and directs the driver as to which delivery to proceed to next. (*Id.* at 27.) Plaintiff has presented examples of what the manifests look like. (Doc. No. 37-2 at 104–80.) These manifests reflect the deliveries, delivery times, rest breaks, and meal periods a driver will make on a given day, along with the amount of time provided for each.⁴ (*Id.*) Josserand testified at his deposition that "[w]hen [the driver] comes in in the morning he'll have his manifest, and he'll follow that direction of that." (*Id.* at 34) (Josserand Depo.). Further, the manifest tells the drivers the order the stops should be made in. (Doc. No. 38-3 at 8) (Josserand Depo.). Plaintiff testified at his deposition that he was not permitted to change the order of a delivery from what was presented on the manifest, though his supervisor could ask him to skip a particular store. (Doc. No. 37-2 at 55) (Deposition of John Martin) ("Martin Depo."). He also testified that the defendants monitored progress through the Telogis system, and if he was delayed by more than thirty minutes in reaching a stop on the manifest, he would receive a call from his supervisors. (*Id.* at 53–54.)

---

³ Contrary to plaintiff's argument at the hearing on the pending motion, this question would not be a suitable class-wide contention for the jury to resolve at trial. "Class claims must share a common contention, the truth or falsity of which will resolve issues central to the claims at one stroke." *Quinlan v. Macy's Corp. Serv., Inc.*, No. CV 12-00737 DDP (JCx), 2013 WL 11091572, at *4 (C.D. Cal. Aug. 22, 2013). Were a jury to conclude that there is no company-wide policy making these route manifests into mandatory schedules, this would not necessarily result in a judgment on the merits for defendants, but would instead require the court to decertify the class. *See, e.g.*, *In re: Autozone, Inc.*, No. 3:10-md-02159-CRB, 2016 WL 4208200, at *9–13 (N.D. Cal. Aug. 10, 2016) (decertifying rest break class because there was no evidence of a consistent policy or practice); *Stiller v. Costco Wholesale Corp.*, 298 F.R.D. 611, 623–25 (S.D. Cal. Apr. 15, 2014) (decertifying off-the-clock class because there was insufficient evidence of a common policy or practice); *Castle v. Wells Fargo Fin., Inc.*, No. C 06-4347 SI, 2008 WL 495705, at *2–5 (N.D. Cal. Feb. 20, 2008) (denying certification where the employees were denied overtime for varying reasons based on the practices of individual supervisors, while noting that each plaintiff would be "likely to prevail on an individual basis").

⁴ Plaintiff's counsel explained at the hearing that these documents are printed versions of the electronic manifests that are uploaded for each driver at the start of the day, and are therefore prospective in nature.

13

Plaintiff also came forward with three declarations from putative class members, which state that defendants provided the route they were to follow, and that the route told them "what stops to make and when to take [their] lunches and rest breaks." (*See* Doc. No. 37-2 at 73, 76, 79) (Declarations of Eric Mello, Debin Cowell, and Larry Castillo). Mello and Castillo both declared they were unable to change their route. (Doc. No. 37-2 at 73, 79.) Plaintiff has thus presented some evidence that it was mandatory that class members follow the route manifests.

Defendants, meanwhile, present evidence that the routes do not set a mandatory time or sequence for meal or rest breaks and that class members are not required to follow the manifests. Josserand testified at his deposition that the manifests only reflect estimated delivery times, and that drivers are not expected to make deliveries in accordance with these estimated times. (Doc. No. 38-3 at 9.) He also testified that Sysco does not evaluate drivers on whether they make the projected delivery times on the route manifests and that they are not "rigid benchmarks that . . . must be met." (*Id.* at 10.) Defendants also provided declarations from three different drivers, who generally state they are not bound to follow the route manifests, do not pay attention to the estimated times listed, and that the manifest does not dictate when they take their meal and rest breaks. (*Id.* at 123, 128, 132–34) ("I have no idea if the manifest includes a suggested time for my lunch and rest breaks."). Even plaintiff testified at his deposition that he had never been disciplined, nor had he heard of anyone being disciplined, for failing to follow the times on the route manifests or taking rest breaks or meal breaks at times that do not match the manifest. (*Id.* at 105–10.) The only intervention from a supervisor plaintiff ever experienced in relation to the manifests was what he described as a "verbal warning"; specifically, one of his supervisors called him after he had fallen behind in his deliveries and asked him "what's going on, why am I being behind, if I need help." (*Id.* at 105.)

Thus, there is conflicting evidence before the court about whether the route manifests are mandatory schedules that must be followed. Plaintiff bears the burden of establishing that class certification is warranted here. *See Comcast*, 569 U.S. at 33; *Dukes*, 564 U.S. at 350; *In re Apple iPod iTunes Antitrust Litig.*, 796 F. Supp. 2d 1137, 1142 (N.D. Cal. 2011) ("The party seeking class certification bears the burden of establishing that each of the four requirements of Rule

23(a) and at least one requirement of Rule 23(b) have been met."). While Rule 23 does not specifically address the burden of proof to be applied, courts routinely employ the preponderance of the evidence standard. *See* 3 Newberg on Class Actions § 7:21 (5th ed.); *see also Allen v. ConAgra Foods, Inc.*, No. 13-cv-01279-VC, 2015 WL 13035176, at *1 (N.D. Cal. Jan. 9, 2015); *Gaudin v. Saxon Mortg. Servs., Inc.*, 297 F.R.D. 417, 424 (N.D. Cal. 2013); *Gregurek v. United of Omaha Life Ins. Co.*, No. CV 05-6067 GHK (FMOx), 2009 WL 4723137, at *5 (C.D. Cal. Nov. 10, 2009) (noting that "the Second and Third Circuits have recently embraced a preponderance standard for evidence relevant to certification"). This court will therefore adopt the preponderance of the evidence standard as the burden of proof plaintiff must meet here.

        The court concludes that plaintiff has failed to show it is more likely than not that the route manifests were mandatory schedules that needed to be followed. At best, the evidence presented here shows that the manifests generally set out each driver's schedule for the day. However, it is clear that some aspects of these manifests, such as the delivery times depicted, are only estimates. It stands to reason that the times slotted for rest breaks and meal breaks are therefore only estimated as well. While plaintiff has presented affidavits from several individuals who believed they were required to take their meal and rest breaks only when the break came up on the route manifest, defendants presented affidavits that indicated other employees felt they could take their meal and rest breaks whenever they wanted. A fair reading of this evidence is that employees had different impressions about what they were or were not permitted to do. This difference in understanding could stem from differences in application between individual supervisors or the employees' own mistaken beliefs. No written policy requiring class members to follow the route manifests has been presented to the court. Lastly, there is no evidence that any class member has ever been disciplined for taking a meal or rest break in an order different than depicted on the manifest. In light of the evidence presented, the court concludes plaintiff has not demonstrated that the manifests are a mandatory schedule drivers must follow, or that they dictate when the drivers may take rest and meal breaks.

        In short, even though there are common questions of law and fact—such as whether the manifests in fact were mandatory schedules—the court is unconvinced that these questions will

predominate over individualized inquiries. *See, e.g.*, *Gibson v. Credit Suisse AG*, No. CV 10–1–EJL–REB, 2013 WL 5375648, at *3, *13 (D. Idaho Aug. 16, 2013) *report and recommendation adopted*, 2013 WL 5375597 (denying certification due to a lack of predominance, though noting "there need be only a single issue common to all members of the class" to satisfy commonality) (internal quotations omitted); *Estate of Felts v. Genworth Life Ins. Co.*, 250 F.R.D. 512, 521, 525 (W.D. Wash. 2008) (same). As such, plaintiff's motion for class certification is denied as to this theory of liability.

## CONCLUSION

For the reasons stated above:

1. Plaintiff's motion for class certification is granted in part, and the following classes are certified for the purpose of pursuing claims premised on the facial invalidity of defendants' rest and meal break policies:

   **Main Class**: All hourly drivers who are or were employed by Sysco at any time from June 7, 2012 to the date of this order.

   **Rest Break Subclass**: All hourly drivers who are or were employed by defendants in California and worked a shift over ten (10) hours at any time from June 7, 2012 to the date of this order.

   **First Meal Period Subclass**: All hourly drivers who are or were employed by defendants in California who worked a shift over five (5) hours at any time from June 7, 2012 to the date of this order, where the corresponding e-time records show no 30-minute meal period or show a 30-minute meal period after the fifth hour.

   **Second Meal Period Subclass**: All hourly drivers who are or were employed by defendants in California who worked a shift over ten (10) hours at any time from June 7, 2012 to the date of this order, where the corresponding e-time records show a second 30-minute meal period after the tenth hour, if at all.

   **Waiting Time Penalties Subclass**: All hourly drivers who ended their employment with Sysco at any time from June 7, 2013 to the date of this order.

2. Plaintiff's motion for class certification is denied to the extent plaintiff seeks certification of the above classes for the purpose of pursuing claims under the theory that the route manifests set forth a required schedule to which class members were required to adhere;

/////

16

3. The parties are directed to meet and confer promptly upon service of this order concerning the submission of a joint stipulated class notice and distribution plan, based on the subclasses as certified in this order. The parties shall file either a stipulated class notice and distribution plan or a notice that no stipulation can be reached within twenty-one (21) days of service of this order. If the parties cannot agree to a class notice or distribution plan, plaintiff shall submit a proposed class notice and distribution plan within thirty-five (35) days of service of this order. Defendants will have fourteen (14) days following plaintiffs' submission of a proposed class notice and distribution plan to file any objections thereto. Plaintiff will have seven (7) days thereafter to submit a reply; and

4. This matter is referred back to the assigned magistrate judge for further scheduling and other proceedings consistent with this order.

IT IS SO ORDERED.

Dated:  **April 19, 2018**

UNITED STATES DISTRICT JUDGE