UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MARTIN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SYSCO CORPORATION and SYSCO CENTRAL CALIFORNIA, INC.,<br><br>Defendants. | No. 1:16-cv-00990-DAD-SAB<br><br>ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT<br><br>(Doc. No. 61) |

This is an employment class action brought by plaintiff John Martin on behalf of himself and the class members—all of whom are employed as truck drivers for defendants—alleging that they were not provided meal and rest breaks in accordance with California law. The class having previously been certified by this court (Doc. No. 44), plaintiff now moves for preliminary approval of the class action settlement. (Doc. No. 61.) A hearing on the motion was held on July 2, 2019, at which attorney Jill Vecchi appeared on behalf of plaintiff, and attorney Sabrina Shadi appeared on behalf of defendants. For the reasons set forth below, the court will grant plaintiff's motion.

**BACKGROUND**

On June 7, 2016, plaintiff initiated this action in Stanislaus County Superior Court, alleging various violations of the California Labor Code and California's Unfair Competition

1

| | |
|---|---|
| 1 | Law.  (*See generally* Doc. No. 1-1.)  Defendants removed the action to this federal court on July |
| 2 | 11, 2016, relying on the Class Action Fairness Act, 28 U.S.C. § 1332(d).  (Doc. No. 1 at ¶ 1.)  On |
| 3 | December 18, 2017, plaintiff moved for class certification, which the undersigned granted in part. |
| 4 | (Doc. Nos. 37, 44.) |
| 5 | On April 8, 2019, plaintiff filed a notice of settlement with the court.  (Doc. No. 59.)  That |
| 6 | settlement agreement (the "Agreement") has been attached as an exhibit to the pending motion. |
| 7 | (*See* Doc. No. 61-2.)  According to the Agreement, defendant will pay a gross amount of |
| 8 | $500,000.00.  (*Id.* at 7.)  Included in that amount is an award of attorneys' fees.  Under the terms |
| 9 | of the Agreement, plaintiffs' counsel will apply for an award of attorneys' fees, and defendant |
| 10 | agrees not to oppose such an application so long as it does not exceed 30% of the gross settlement |
| 11 | amount or $150,000.00.  (*Id.* at 8.)  However, plaintiff's motion indicates that it intends to seek |
| 12 | only $125,000.00 in attorneys' fees. (Doc. No. 61 at 16.)  The Agreement contains a similar |
| 13 | provision with respect to costs, stating that defendant agrees not to oppose an award of costs up to |
| 14 | $75,000.00.  (Doc. No. 61-2 at 8.)  If the actual amount of costs is less than the amount requested, |
| 15 | the difference shall be made available for distribution to class members.  (Doc. No. 61 at 16.) |
| 16 | The Agreement also contemplates an award of $7,500.00 as an incentive payment to the named |
| 17 | plaintiff.  (Doc. No. 61-2 at 8.)  Next, the Agreement provides for payment of up to $20,000.00 to |
| 18 | ILYM Group Inc. ("ILYM") for costs of administering the Agreement.  (*Id.* at 9.)  This leaves an |
| 19 | estimated net settlement amount for the class members of $272,500.00.  (Doc. No. 61 at 17.) |
| 20 | Plaintiff's motion also provides a breakdown of the estimated value of the class claims. |
| 21 | Taking into account the claims for loss of meal breaks, loss of rest breaks, and the associated |
| 22 | waiting time penalties, plaintiff's motion avers that the maximum potential recovery for the class |
| 23 | is $4,473.551.00.  (*Id.* at 21–22.)  While acknowledging that the proposed settlement amount in |
| 24 | the Agreement amounts only to a fraction of this total recovery, plaintiff avers that due to the |
| 25 | litigation risk the class is likely to confront at trial the proposed settlement is fair, adequate, and |
| 26 | reasonable.  (*Id.* at 22–23.) |
| 27 | ///// |
| 28 | ///// |

## LEGAL STANDARD

"Courts have long recognized that settlement class actions present unique due process concerns for absent class members." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citation and internal quotations omitted). To protect the rights of absent class members, Rule 23(e) of the Federal Rules of Civil Procedure requires that the court approve all class action settlements "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *In re Bluetooth*, 654 F.3d at 946.

Review of a proposed class action settlement ordinarily involves two hearings. *See* Manual for Complex Litig. (4th) § 21.632. First, the court conducts a preliminary fairness evaluation. If the court makes a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms, the parties are directed to prepare the notice of proposed settlement to the class members. *Id.* (noting that if the parties move for both class certification and preliminary approval, the certification hearing and preliminary fairness evaluation can usually be combined). Second, the court holds a final fairness hearing to determine whether to approve the settlement. *Id.*; *see also Narouz v. Charter Commc'ns, Inc.*, 591 F.3d 1261, 1266–67 (9th Cir. 2010).

## ANALYSIS

The court has already evaluated the standards for class certification in its prior order granting in part plaintiff's motion for class certification (Doc. No. 44) and finds no basis to revisit any of the analysis contained in that order. Accordingly, the court proceeds directly to consideration of whether the settlement is appropriate under Rule 23(e). *See* Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."). This requires that: (1) notice be sent to all class members; (2) the court hold a hearing and make a finding that the settlement is fair, reasonable, and adequate; (3) the parties seeking approval file a statement identifying the settlement agreement; and (4) class members be given an opportunity to object. Fed. R. Civ. P. 23(e)(1)–(5).

/////

/////

## A. Notice to the Class

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)). Any notice of the settlement sent to the class should alert class members of "the opportunity to opt-out and individually pursue any state law remedies that might provide a better opportunity for recovery." *Hanlon*, 150 F.3d at 1025. It is important for class notice to include information concerning the attorneys' fees to be awarded from the settlement, because it serves as "adequate notice of class counsel's interest in the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 963 n.15 (9th Cir. 2003) (noting that where notice references attorneys' fees only indirectly, "the courts must be all the more vigilant in protecting the interests of class members with regard to the fee award").

Here, plaintiff provides a notice form that describes the terms of the settlement, informs the class of the attorneys' fee amount, provides information concerning the time, place, and date of the final approval hearing, and informs absent class members that they may enter an appearance through counsel. (Doc. No. 61-2 at 22–27.) It also notifies absent class members about how they may object to the proposed settlement or opt out, and provides for mail delivery of the notices. Finally, it provides a deadline by which any objections must be postmarked, which according to plaintiff's motion will be forty-five days from the initial mailing of the notices. (Doc. No. 61 at 24; 61-2 at 25.) The court finds that this notice is sufficient to apprise the absent class members of the material terms of the Agreement and inform them of their rights and obligations under it.

## B. Adequacy of the Settlement

The standard for determining whether to grant final approval of a class settlement is well settled. District courts analyze eight separate factors in resolving whether the settlement is fair, reasonable, and adequate:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill.*, 361 F.3d at 575 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026); *accord Mathein v. Pier 1 Imports (U.S.), Inc.*, No. 1:16-cv-00087-DAD-SAB, 2018 WL 1993727, at *5 (E.D. Cal. Apr. 27, 2018); *Emmons v. Quest Diagnostics Clinical Labs., Inc.*, No. 1:13-cv-00474-DAD-BAM, 2017 WL 749018, at *4 (E.D. Cal. Feb. 27, 2017); *Taylor v. FedEx Freight, Inc.*, No. 1:13-cv-01137-DAD-BAM, 2016 WL 6038949, at *3 (E.D. Cal. Oct. 13, 2016); *Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 886 (C.D. Cal. 2016); *Lane v. Brown*, 166 F. Supp. 3d 1180, 1188 (D. Or. 2016); *Carr v. Tadin, Inc.*, 51 F. Supp. 3d 970, 975 (S.D. Cal. 2014). By contrast, "there is relatively scant appellate authority regarding the standard that a district court must apply in reviewing a settlement at the *preliminary* approval stage." *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2014 WL 3917126, at *3 (N.D. Cal. Aug. 8, 2014) (emphasis added). While "district courts often state or imply that scrutiny [of preliminary settlements] should be more lax," *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1035–36 (N.D. Cal. 2016), the undersigned questions that approach, as have other district courts. *See O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1122 (N.D. Cal. 2016) ("[I]t makes little sense to apply a lax standard at the preliminary approval stage to factors already known and amenable to analysis."). In *O'Connor*, District Judge Chen opted to apply the eight *Churchill Village* factors "with full force" in deciding whether to preliminarily approve the settlement, recognizing that some factors (such as the reaction of class members to the proposed settlement) can only be addressed after notice has been effectuated. *Id.* The logic of doing so is plain: better to notify the litigants in advance of any deficiencies in the settlement and allow time to remedy them, rather than to spring an objection on them and potentially blow up the settlement in its entirety. The court finds that this approach is more likely to produce a final settlement that is amenable to both the parties and the court. *See Fowler v. Union Pac. R.R. Co.*, No. EDCV 17–02451 JGB (SPx), 2018 WL 6318836, at *8 (C.D. Cal. July 23, 2018) (noting the "strong judicial policy in

favor of settlement of class actions"). Thus, to the extent it may do so with the information presently before it, the court examines each of the *Churchill Village* elements in turn.

### 1. Strength of Plaintiff's Case

The court first examines the strength of plaintiff's case. As set forth in plaintiff's motion, the parties' dispute centers around what defendants' policies were with respect to meal and rest periods. (Doc. No. 61 at 10–13.) Plaintiff argues that defendants' policies were contained in defendants' employee handbook, and that these policies are facially unlawful. As an example, plaintiff points to the route manifests given to the class members, which "map out a driver's perfect route" for the day. (*Id.* at 10.) According to plaintiff, this "perfect route" does not provide for timely meal and rest periods, because of which the policy violates California law.

Defendants take issue with this characterization of their policies. Specifically, defendants argue that its meal period policy is set forth both in its employee handbook and in standalone policies. (*Id.* at 11–12.) Thus, contrary to plaintiff, defendants argue that its policy actually derives from multiple sources, and that taken together, this policy does not violate California law. In addition, defendants point out that all drivers are provided with Meal/Break Recording Forms, and all drivers must fill these forms out after each shift confirming that they received meal periods in compliance with California law. (*Id.* at 12.) Accordingly, defendants contend that they have explicit policies in place mandating that drivers take appropriate meal and rest breaks, and that the drivers themselves have all confirmed in writing that they received them.

At bottom, this action is likely to reduce to a question of which evidence a jury finds more persuasive. Plaintiff contends that he would call numerous drivers as witnesses at trial who would testify in support of plaintiff's interpretation of defendants' policies. (*Id.* at 11.) For their part, defendants would likely present evidence that the drivers themselves agreed in writing that they had taken appropriate meal breaks, and would also produce additional policies not found in the employee handbook. The court cannot say with any degree of certainty that plaintiff would prevail on his claims on behalf of the class. This factor therefore weighs in favor of preliminary approval of the proposed settlement.

/////

1            2.      <u>Risk, Expense, Complexity, and Likely Duration of Further Litigation</u>

"Settlement between parties is generally preferred to expensive and time-consuming litigation." *Apparicio v. Radioshack Corp.*, No. CV 08–1145 GAF (AJWx), 2010 WL 11507856, at *2 (C.D. Cal. June 7, 2010). Here, although plaintiff has successfully navigated class certification, the parties will still be required to litigate this case extensively in order for plaintiff to obtain any monetary judgment. This case has been litigated for roughly three years already, and were the case to proceed to a jury trial, that timeline would be extended even further. Further litigation would be costly and, as hinted at above, plaintiff is not guaranteed any recovery. This factor accordingly weighs in favor of preliminary approval.

           3.      <u>Risk of Maintaining Class Action Status Throughout Trial</u>

As noted, the court has already certified the class, and the parties have not directed the court to anything that would call that order into question. Because the court finds that there is little to no risk of maintaining class action status throughout trial, this factor does not weigh in favor of preliminary approval.

           4.      <u>Amount Offered in Settlement</u>

"In determining whether the amount offered in settlement is fair, a court is to compare the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation." *Gonzalez v. BMC W., LLC*, No. EDCV 17–00390 JGB (RAOx), 2018 WL 3830774, at *6 (C.D. Cal. May 23, 2018) (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000)); *see also Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) ("In determining whether the proposed settlement falls within the range of reasonableness, perhaps the most important factor to consider is plaintiffs' expected recovery balanced against the value of the settlement offer.") (internal quotation marks omitted). While the amount awarded under the terms of a settlement agreement is certainly relevant to the ultimate determination of whether the agreement as a whole is fair, reasonable, and adequate, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982).

As stated, the Agreement provides for a gross settlement amount of 500,000.00. (Doc. No. 61-2 at 7.) This amount is roughly 11% of the total value of the claims as set forth in plaintiff's motion. (Doc. No. 61 at 22.) It is also an amount on the low end of class settlement agreements previously approved by this court. *See, e.g.*, *Goodwin v. Winn Mgmt. Grp. LLC*, No. 1:15-cv-00606-DAD-EPG, 2018 WL 1036406, at *5 (E.D. Cal. Feb. 23, 2018) (approving a settlement that "reflects a recovery of more than half of what the class could reasonably expect to recover"); *Aguilar v. Wawona Frozen Foods*, No. 1:15-cv-00093-DAD-EPG, 2017 WL 2214936, at *3 (E.D. Cal. May 19, 2017) (approving a settlement which, depending on the method of calculation, equated to either 47 or 75 percent of the total anticipated recovery); *Emmons*, 2017 WL 749018, at *5 (approving a settlement amount of $2.35 million in a case in which plaintiffs sought damages upward of $8.5 million); *Syed v. M-I, L.L.C.*, No. 1:12-cv-01718-DAD-MJS, 2017 WL 714367, at *9 (E.D. Cal. Feb. 22, 2017) (approving a total settlement of $7 million, which the parties estimated to be roughly 35 percent of the major class overtime claims). *But see Singh v. Roadrunner Intermodal Servs.*, LLC, No. 1:15-cv-01497-DAD-BAM, 2019 WL 316814, at *5 (E.D. Cal. Jan. 24, 2019) (approving a proposed settlement of $9.25 million, which was roughly 11 percent of the maximum damages to be awarded to class members). Of course, every case stands on its own facts, and district courts within the Ninth Circuit have approved settlements where the amount offered as a percentage of the total value of the claim is even smaller than the one proposed in this case. *See, e.g.*, *Hendricks v. StarKist Co.*, No. 13-CV-00729-HSG, 2016 WL 5462423, at *5 (N.D. Cal. Sept. 29, 2016), *aff'd sub nom. Hendricks v. Ference*, 754 Fed. App'x 510 (9th Cir. 2018); *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-CV-02540-HSG, 2015 WL 3776765, at *2 (N.D. Cal. June 17, 2015) (approving a settlement amount of roughly 7.3 percent of plaintiff's estimate of the value of the case). Nonetheless, the court expresses some concern regarding whether the amount to be awarded under the terms of the Agreement amounts to fair, reasonable, and adequate disposition of this case.

Nonetheless, the court does not presently have material before it sufficient to make a reasoned determination of whether the settlement amount proposed in the Agreement is adequate. Rather than denying preliminary approval of the Agreement in its entirety, however, the court

finds that the most prudent course is to raise the issue for the parties' awareness and invite them to provide additional argument and evidence in preparation for the final fairness hearing. It may well be that in light of the serious litigation risks faced by plaintiff and the class, settlement at such a dollar amount is warranted in this case. At present, however, the court is not convinced that consideration of this factor weighs in favor of approval of the Agreement.

### 5. Extent of Discovery Completed and Stage of the Proceedings

"The amount of discovery completed affects approval of a stipulated settlement because it indicates whether the parties have had an 'adequate opportunity to assess the pros and cons of settlement and further litigation.'" *In re MRV Commc'ns, Inc. Derivative Litig.*, No. CV 08-03800 GAF MANX, 2013 WL 2897874, at *4 (C.D. Cal. June 6, 2013) (quoting *In re Cylink Sec. Litig.*, 274 F. Supp. 2d 1109, 1112 (N.D. Cal. 2003)).

As evidence of the amount of discovery completed, plaintiff's counsel David Mara has submitted a declaration in support of the motion for preliminary approval of the class settlement. (Doc. No. 61-1 ("Mara Decl.").) The Mara Declaration states that plaintiff served one set of interrogatories and one set of requests for production on both defendants, and that defendant Sysco Central California Inc. served the same on plaintiff. (*Id.* at ¶¶ 9–10.) The parties engaged in a discovery dispute regarding the contact information for various drivers, and defendants ultimately produced over 10,000 pages of documents. (*Id.* at ¶ 11.) Finally, plaintiff took the deposition of defendant Sysco Central California, Inc.'s Federal Rule of Civil Procedure 30(b)(6) witness. (*Id.* at ¶ 12.) Under these circumstances, the court is satisfied that the parties possess sufficient information to make an informed decision as to the merits of the case. This factor therefore weighs in favor of preliminary approval.

### 6. Experience and Views of Counsel

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). The Mara Declaration, referenced in the preceding section, states that attorney Mara he has been practicing law in California since 2004, and frequently handles employment law cases alleging violations of the California Labor Code

and Industrial Welfare Commission Wage Orders. (Mara Decl. at ¶¶ 2–3.) After listing several employment law cases in which he is involved, attorney Mara avers that the agreement was reached after a daylong mediation session. (*See generally id.*) Of some concern, however, the Mara Declaration expresses no view about the adequacy of the Agreement, rendering it of only limited value. While the court recognizes attorney Mara's subject-matter expertise in the area of employment law, consideration of this factor provides little support for plaintiff's motion.

       7.     Presence of a Governmental Participant

There is no governmental participant in this action, so this factor is not at issue.

       8.     Reaction of Class Members

Because notice has not yet been sent to the class members, this factor is not at issue.

In sum, while the court has some uncertainty whether the settlement amount is fair and reasonable in light of the total value of the claims, the court nonetheless finds that preliminary approval is warranted. At the final fairness hearing, the parties will be expected to provide a more robust explanation on whether the Agreement is fair, reasonable, and adequate.

**C.    Filing of the Settlement Agreement**

The Agreement has been filed on the court's docket. (Doc. No. 61-2.) This requirement under Rule 23(e)(3) is therefore satisfied.

**D.    Opportunity to Object**

Rule 23(e)(4) requires that a settlement afford absent class members an opportunity to be excluded from the class, even if they were previously afforded such an opportunity at the certification stage and declined to exercise that option. As discussed above, the proposed Notice of Class Action Settlement contains explicit instructions to absent class members regarding how to object. Specifically, it states that a class member may submit an objection to the settlement administrator, what the contents of the objection should be, and what evidence the objector intends to present at a hearing. (Doc. No. 61-2 at 25.) The court finds that this adequately advises absent class members of the manner in which they may submit objections.

/////

/////

**E.     Attorneys' Fees and Expenses**

Finally, the court addresses the reasonableness of the awards of attorneys' fees, incentive payments, and costs.

    1.     Attorneys' Fees

When a negotiated class action settlement includes an award of attorneys' fees, the fee award must be evaluated in the overall context of the settlement. *Knisley v. Network Assocs.*, 312 F.3d 1123, 1126 (9th Cir. 2002). At the same time, the court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941; *see also Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328–29 (9th Cir. 1999). Where, as here, fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). As a result, the district court must assume a fiduciary role for the class members in evaluating a request for an award of attorney fees from the common fund. *Id.*; *see also Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009).

The Ninth Circuit has approved two methods for determining attorneys' fees in such cases where the attorneys' fee award is taken from the common fund set aside for the entire settlement: the "percentage of the fund" method and the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citation omitted). The district court retains discretion in common fund cases to choose either method. *Id.*; *Vu v. Fashion Inst. of Design & Merch.*, No. CV 14-08822 SJO (EX), 2016 WL 6211308, at *5 (C.D. Cal. Mar. 22, 2016). Under either approach, "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002).

Under the percentage of the fund method, the court may award class counsel a given percentage of the common fund recovered for the class. *Id.* In the Ninth Circuit, a twenty-five percent award is the "benchmark" amount of attorneys' fees, but courts may adjust this figure upwards or downwards if the record shows "special circumstances justifying a departure." *Id.*

(quoting *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). Percentage awards of between twenty and thirty percent are common. *See Vizcaino*, 290 F.3d at 1047; *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("This court's review of recent reported cases discloses that nearly all common fund awards range around 30% even after thorough application of either the lodestar or twelve-factor method."). Nonetheless, an explanation is necessary when the district court departs from the twenty-five percent benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000).

To assess whether the percentage requested is reasonable, courts may consider a number of factors, including:

> [T]he extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015) (internal quotation marks omitted). The Ninth Circuit has permitted courts to award attorneys' fees using this method "in lieu of the often more time-consuming task of calculating the lodestar." *In re Bluetooth*, 654 F.3d at 942.

Plaintiff's claims are based on state law, because of which California law governs the award and calculation of attorneys' fees. *See Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1024 (9th Cir. 2003) ("An award of attorneys' fees incurred in a suit based on state substantive law is generally governed by state law."). Under California law, "[t]he primary method for establishing the amount of reasonable attorney fees is the lodestar method." *In re Vitamin Cases*, 110 Cal. App. 4th 1041, 1053 (2003) (internal quotation marks and citations omitted). The court determines the lodestar amount by multiplying a reasonable hourly rate by the number of hours reasonably spent litigating the case. *See Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 (9th Cir. 2001). The product of this computation, the "lodestar" amount, yields a presumptively reasonable fee. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). The Ninth

Circuit has recommended that district courts apply one method but cross-check the appropriateness of the amount by employing the other as well. *See In re Bluetooth*, 654 F.3d at 944.

Here, plaintiff seeks attorneys' fees of 25% of the settlement amount, $125,000 in fees. (Doc. No. 61 at 16.) This fee amount is in line with the benchmark rate in the Ninth Circuit. *See In re Bluetooth*, 654 F.3d at 947. As such, the court approves the attorneys' fee request on a preliminary basis. In connection with the final fairness hearing, the court will cross check the requested amount with the lodestar amount based upon counsels' submission and determine whether this amount is reasonable here.

### 2. Incentive Payment

The court next addresses the reasonableness of the proposed incentive award. While incentive awards are "fairly typical in class action cases," they are discretionary sums awarded by the court "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publ'g Corp.*, 563 F.3d at 958–59; *see also Staton*, 327 F.3d at 977 ("[N]amed plaintiffs . . . are eligible for reasonable incentive payments."). Such payments are to be evaluated individually, and should look to factors such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)). Such awards must be "scrutinize[d] carefully . . . so that they do not undermine the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013). Thus, incentive awards which are explicitly conditioned on the representatives' support for the settlement, as well as those that are significantly higher than the average amount awarded in settlement, should often not be approved. *Id.* at 1164–65. The core inquiry is whether an incentive award creates a conflict of interest, and whether plaintiffs "maintain a sufficient interest

/////

in, and nexus with, the class so as to ensure vigorous representation." *In re Online DVD-Rental*, 779 F.3d at 943.

Here, plaintiff seeks an incentive payment of $7,500.00 for his service as a class representative in this action. (Doc. No. 61 at 14–16.) In support of this request, plaintiff's motion points out that the named plaintiff "risked a potential judgment taken against him for attorneys' fees and costs if this matter had not been successfully concluded." (*Id.* at 14.) Moreover, the named plaintiff undertook this action at substantial risk to his own career, since being a named plaintiff in a class action against one's own employer can damage both present and future job prospects. (*Id.* at 15–16.)

An incentive award of $7,500.00 amounts to roughly 1.5 percent of the gross settlement amount. This is in line with other incentive awards that have been approved by the undersigned. *See, e.g.*, *Goodwin*, 2018 WL 1036406, at *11 (awarded a reduced incentive payment of $3,750.00, equivalent to 1.5 percent of the total fund); *Mitchinson v. Love's Travel Stops & Country Stores, Inc.*, No. 1:15-cv-01474-DAD-BAM, 2017 WL 2289342, at *9 (E.D. Cal. May 25, 2017) (awarding a $5,000 incentive payment for a $290,000 settlement, or 1.7 percent of the fund); *Aguilar*, 2017 WL 2214936, at *8 (awarding $15,000 in total incentive payments from a $4.5 million fund, or 0.33 percent of the fund); *Emmons*, 2017 WL 749018, at *9 (approving incentive payments to two named plaintiffs that, combined, equaled approximately 0.68 percent of the fund); *Taylor*, 2016 WL 6038949, at *8 (awarding lowered incentive payment of $15,000, or 0.4 percent of the fund). Because the court finds that the proposed incentive award is reasonable, the court approves it on a preliminary basis. At the final approval hearing, the court will review plaintiff's evidence that the requested incentive award is warranted here—i.e., evidence of the specific amount of time plaintiff spent on the litigation, the particular risks and burdens carried by plaintiff as a result of the action, or the particular benefit that plaintiff provided to counsel and the class as a whole throughout the litigation. *See Bautista v. Harvest Mgmt. Sub LLC*, No. CV 12-10004 FMO (CWx), 2013 WL 12125768, at *15 (C.D. Cal. Oct. 16, 2013).

/////

3.      Settlement Costs

Finally, the court addresses the reasonableness of the requested settlement costs. The parties have agreed to the appointment of ILYM Group, Inc. to serve as the settlement administrator. (Doc. No. 61 at 16.) ILYM has estimated that its expenses in administering the settlement will not exceed $20,000.00, and the parties state that if ILYM's actual expenses are less than that amount, the difference shall be made available for distribution to the class. (*Id.* at 16–17.) As with the incentive payments, this amount is comparable to payments approved by this court in prior cases. *See Emmons*, 2017 WL 749018, at *9 (approving a payment of $25,000.00 to the settlement administrator); *Taylor*, 2016 WL 6038949, at *9 (same).

## CONCLUSION

For the reasons set forth above,

1. Plaintiff's motion for preliminary approval of the class action settlement (Doc. No. 61) is granted;
2. ILYM Group, Inc. is appointed as settlement administrator;
3. The Notice of Class Settlement as attached to plaintiff's motion is approved;[1]
4. The settlement administrator is ordered to mail the Notice of Proposed Class Settlement to the class members;
5. Each class member will have forty-five (45) days after the date on which the settlement administrator mails the Notice of Proposed Class Settlement to object to the Agreement by informing the settlement administrator in writing of his or her intent to object by following the procedure set forth in the Notice of Proposed Class Settlement no later than forty-five (45) days after the mailing of the Notice of Proposed Class Settlement;
6. Any class member who has submitted such written objections may, but is not required to, appear himself or herself, or through counsel, at the final fairness

---

[1] At the hearing on the pending motion, the parties indicated that they would make one alteration to the Notice of Class Settlement, modifying it to include the correct case number for this case. With that modification, the court approves the Notice.

15

hearing and object to the approval of the Agreement or the award of attorneys' fees and reimbursement of expenses to class counsel. No class member, or any other person, shall be heard or entitled to contest the approval of the proposed Agreement, the judgment to be entered approving the same, or the award of attorneys' fees and reimbursement of expenses to class counsel, unless that class member has submitted written objections in the manner set forth herein. The parties may file any response to the objections submitted by objecting class members, if any, no later than seven (7) days before the final fairness hearing;

7. Any class member who does not make his or her objection(s) in the manner provided herein and in the Notice of Proposed Class Settlement shall be deemed to have waived such objection(s) and shall forever be foreclosed from making any objection(s) to the fairness or adequacy of the Agreement, the award of attorneys' fees, and reimbursement of expenses to counsel and the right to appeal any orders that are entered relating thereto, unless otherwise ordered by the court;

8. If the Agreement is not finally approved by the court or for any reason is terminated or the Effective Final Settlement Date does not occur for any reason whatsoever, the Agreement that is the subject of this order, and all evidence and proceedings had in connections therewith, shall be without prejudice to the *status quo ante* rights of the parties to the litigation;

9. A final fairness hearing shall be held at a date and time to be determined by the court after the motion for final approval of the Agreement agreed is filed;

10. During the court's consideration of the settlement and pending further order of the court, all proceedings in this case, other than proceedings necessary to carry out the terms and provisions of the Agreement, or as otherwise directed by the court, are hereby stayed and suspended;

11. To facilitate administration of the settlement pending final approval, the court hereby enjoins the class members from prosecuting the released claims against defendant or any of the other released parties; and

12. The court recognizes that this order is for settlement purposes only, and shall not constitute or be construed as a finding by the court, or an admission on the part of defendant or any of the released parties, of any fault or omission with respect to any claim.

IT IS SO ORDERED.

Dated: **July 18, 2019**

*Dale A. Drozd*
UNITED STATES DISTRICT JUDGE