UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MARTIN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SYSCO CORPORATION and SYSCO CENTRAL CALIFORNIA, INC.,<br><br>Defendants. | No. 1:16-cv-00990-DAD-SAB<br><br>ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT AND AWARDING ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD<br><br>(Doc. No. 66) |

This matter came before the court on December 3, 2019, for hearing on plaintiff's unopposed motion for final approval of a class action settlement and motion for attorneys' fees. (Doc. No. 66.) Attorney Jamie Serb appeared telephonically on behalf of plaintiff John Martin ("plaintiff"), and attorney Nicholas D. Poper appeared telephonically on behalf of defendants Sysco Corporation and Sysco Central California, Inc. ("defendants"). For the reasons set forth below, the court will grant plaintiff's motion.

**BACKGROUND**

The court previously granted preliminary approval of a class action settlement in this action on July 19, 2019. (Doc. No. 64.) Pertinent factual details may be found in that order. Following the granting of preliminary approval, the class administrator mailed class notices to all 167 class members on August 12, 2019. (Doc. No. 66-2 at ¶ 6.) Of the fifteen notices that were

1

returned as undeliverable, thirteen were successfully re-mailed as a result of the class administrator's skip tracing efforts and two were unable to be delivered because no updated address was found. (*Id*. at ¶¶ 7–9.) The deadline to request exclusion from the settlement and to object to the settlement was September 26, 2019. (*Id*. at ¶¶ 10–11.) As of the filing of plaintiff's motion for final approval on November 5, 2019, no class member has requested exclusion and no objections have been filed. (Doc. No. 66 at 11.) Moreover, no class members appeared at the final approval hearing.

## FINAL APPROVAL OF CLASS ACTION SETTLEMENT

The court has evaluated the standards for class certification in its prior order granting in part plaintiff's motion for class certification (Doc. No. 44) and finds no basis to revisit any of the analysis contained in that order. Accordingly, the court proceeds directly to consideration of whether the settlement in this case is appropriate under Rule 23(e). *See* Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."). This requires that: (1) notice be sent to all class members; (2) the court hold a hearing and make a finding that the settlement is fair, reasonable, and adequate; (3) the parties seeking approval file a statement identifying the settlement agreement; and (4) class members be given an opportunity to object. Fed. R. Civ. P. 23(e)(1)–(5).

### A. Legal Standard

"Approval under 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). At the final approval stage, the primary inquiry is whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026 (citing *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982)); *see also Lane*, 696 F.3d at 818–19. Having already completed a preliminary examination of the

agreement, the court reviews it again, mindful that the law favors the compromise and settlement of class action suits. *See, e.g., In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Churchill Village, LLC. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice*, 688 F.2d at 625 (9th Cir. 1982). Ultimately, "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he [or she] is exposed to the litigants and their strategies, positions, and proof." *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003) (quoting *Hanlon*, 150 F.3d at 1026).

> Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026 (citing *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)); *see also Lane*, 696 F.3d at 819. "To survive appellate review, the district court must show it has explored comprehensively all factors[.]" *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012)); *Hanlon*, 150 F.3d at 1026.

Here, the settlement agreement was previously filed on the court docket (Doc. No. 61-2), and class members have been given an opportunity to object (Doc. No. 64 at 10). The court now turns to the adequacy of notice and its review of the settlement following the final fairness hearing.

**B.  Notice**

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill.*, 361 F.3d at 575 (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)). Any notice of the settlement sent to the class should

alert class members of "the opportunity to opt-out and individually pursue any state law remedies that might provide a better opportunity for recovery." *Hanlon*, 150 F.3d at 1025. It is important for class notice to include information concerning the attorneys' fees to be awarded from the settlement, because it serves as "adequate notice of class counsel's interest in the settlement." *Staton*, 327 F.3d at 963 n.15 (quoting *Torrisi*, 8 F.3d at 1375) (noting that where notice references attorneys' fees only indirectly, "the courts must be all the more vigilant in protecting the interests of class members with regard to the fee award").

Here, the court reviewed the class notice that was proposed when the parties sought preliminary approval of the settlement and found it to be sufficient. (Doc. No. 64 at 4.) Notice was mailed by the class administrator to all 167 class members on August 12, 2019. (Doc. No. 66-2 at ¶ 6.) Of the fifteen notices that were returned as undeliverable, thirteen were successfully re-mailed as a result of the class administrator's skip tracing efforts and two were unable to be delivered because no updated address was found. (*Id*. at ¶¶ 7–9.) It therefore appears that approximately 98 percent of the class members received notice of this settlement. Therefore, the court concludes adequate notice was provided to the class here. *Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994) (noting the court need not ensure all class members receive actual notice, only that "best practicable notice" is given); *Winans v. Emeritus Corp.*, No. 13-cv-03962-HSG, 2016 WL 107574, at *3 (N.D. Cal. Jan. 11, 2016) ("While Rule 23 requires that 'reasonable effort' be made to reach all class members, it does not require that each individual actually receive notice."). The court finds sufficient notice has been provided so as to satisfy Federal Rule of Civil Procedure 23(e)(1).

### C. Final Fairness Hearing

On December 3, 2019, the court held a final fairness hearing, at which class counsel and defense counsel appeared telephonically. As noted above, no class members appeared at the hearing. For the reasons discussed below with regard to each of the settlement factors, the court determines that the settlement in this action is fair, reasonable, and adequate.

/////

/////

4

1. Strength of Plaintiff's Case

When assessing the strength of plaintiff's case in this context, the court does not reach "any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of this litigation." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz. 1989). The court cannot reach such a conclusion, because evidence has not been fully presented. *Id*. Instead, the court is to "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Id*.

As discussed in the court's order granting preliminary approval (Doc. No. 64 at 6), this case turns on whether defendants' policies as to meal and rest periods complied with California law. The parties disagree on whether the policies at issue derive from only the employee handbook and route manifests, which plaintiff contends are facially unlawful, or have multiple sources including standalone forms like the Meal/Break Recording Forms, which defendants contend demonstrate that drivers confirmed in writing that they received meal periods in compliance with California law. (Doc. No. 66 at 17–19.) The parties would present evidence at trial of their conflicting interpretations of these policies, leaving the ultimate decision of which interpretation is most persuasive up to the jury.

Further, even if the jury were to agree with plaintiff's interpretation of the policies, defendants argue that they may have affirmative defenses to plaintiff's claims based on an order by the Federal Motor Carrier and Safety Administration ("FMCSA") that purports to preempt

/////
/////
/////
/////
/////
/////
/////
/////

California's meal and rest break laws for certain motor carriers.[1] (Doc. No. 66 at 6–15.) That FMCSA order is currently being challenged in the Ninth Circuit. (*Id*. at 18.) While that challenge is pending, some district courts have granted summary judgment in favor of defendants based on the preemption defense, concluding that district courts are bound by the FMCSA order unless and until the Ninth Circuit invalidates that order. *See e.g.*, *Ayala v. U.S Xpress Enterprises, Inc.*, No. 5:16-cv-00137-GW-KK, 2019 WL 1986760, at *3 (C.D. Cal. May 2, 2019) ("This Court is bound by the FMCSA Order and will apply the Order unless and until it is invalidated by the Ninth Circuit."); *Henry v. Cent. Freight Lines, Inc*., No. 2:16-cv-00280-JAM-EFB, 2019 WL 2465330, at *4 (E.D. Cal. June 13, 2019) ("Thus, unless and until the Ninth Circuit determines otherwise, this Court will follow the FMCSA Preemption Order and will not enforce the preempted provisions.").

Accordingly, plaintiff's case is weakened both by the uncertainty of which party's interpretation of the policies would be most persuasive to a jury, and the uncertainty of how the Ninth Circuit will rule on the challenge to the FMCSA order that forms the basis of defendants' potential affirmative defense.

The court cannot say with any degree of certainty that plaintiff would prevail on his claims on behalf of the class. The court finds this factor weighs in favor of granting final

---

[1] As explained by the court in *Ayala v. U.S Xpress Enterprises, Inc.*, No. 5:16-cv-00137-GW-KK, 2019 WL 1986760, at *2 (C.D. Cal. May 2, 2019):

> On December 28, 2018, the FMCSA, an agency of the United States Department of Transportation ("DOT"), published an Order concluding that the California meal and rest break rules contained in California Labor Code §§ 226.7 and 512, as applied to property-carrying commercial vehicle drivers, are preempted by the FMCSA's hours of service regulations. *See* California's Meal and Rest Break Rules for Commercial Motor Vehicle Drivers; Petition for Determination of Preemption ("Order"), 83 Fed. Reg. 67470, 67470 (Dec. 28, 2018). The order was promulgated under 49 U.S.C. § 31141. *See id.* Under Section 31141, the Secretary of Transportation is authorized to make a determination that state laws meeting certain criteria are preempted and *may not be enforced.* 49 U.S.C. § 31141. The Secretary of Transportation's authority to issue such determinations has been delegated to the FMCSA Administrator. *See* 49 C.F.R. § 1.87(f) (2016). Under Section 31141 judicial review of a DOT preemption determination may only be heard by a circuit court. *See* 49 U.S.C. § 31141(f).

approval of the settlement in this action.

### 2. Risk, Expense, Complexity, and Likely Duration of Further Litigation

"[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). As a result, "[a]pproval of settlement is preferable to lengthy and expensive litigation with uncertain results." *Johnson v. Shaffer*, No. 2:12-cv-1059 KJM AC P, 2016 WL 3027744, at *4 (E.D. Cal. May 27, 2016) (citing *Morales v. Stevco, Inc.*, No. 09–00704, 2011 WL 5511767, at *10 (E.D. Cal. Nov. 10, 2011)). Employment law class actions are, by their nature, time-consuming and expensive to litigate. *Hightower v. JPMorgan Chase Bank, N.A.*, No. CV 11-1802 PSG (PLAx), 2015 WL 9664959, at *6 (C.D. Cal. Aug. 4, 2015).

Though the parties have been litigating this case for over three years, that timeline would be extended even further by litigating this case to a final resolution through a jury trial. The parties' expenses would increase as litigation costs continue to accrue, and any recovery of a monetary judgment, which is not guaranteed, would be prolonged. Thus, consideration of this factor also weighs in favor of granting final approval.

### 3. Risk of Maintaining Class Action Status Throughout Trial

The court previously certified the class and is unaware of any reason why the class would not be able to maintain class action status throughout this case. The parties did not address this factor in the pending motion for final approval or otherwise point to anything that would call class certification into question. The court finds this factor weighs against final approval.

### 4. Amount Offered in Settlement

The gross settlement amount here is $500,000.00 (Doc. No. 66 at 12), and the settlement is projected to pay class members an estimated average payment of $1,999.86 (Doc. Nos. 66 at 11; 69 at ¶ 7). The court noted its concerns that the gross settlement amount may not be fair, reasonable, and adequate because it constitutes roughly 11% of the total value ($4,437,551) of the claims outlined in plaintiff's motion for preliminary approval (Doc. Nos. 61 at 22; 64 at 8.) In the motion for final approval, plaintiff supports the position that this gross settlement amount is fair,

reasonable, and adequate by pointing to several considerations.

Plaintiff reiterates that his likelihood of prevailing at trial is uncertain given the parties' competing contentions and interpretations regarding defendants' meal and rest break policies. Plaintiff asserts that even if his interpretation of the policies is accepted by a jury, there is still no guarantee that the full amount of damages will be awarded. In particular, plaintiff points to defendants' argument that plaintiff would not be owed any waiting time penalties because employers are not liable for waiting time penalties when a good faith dispute exists over the payment of past wages. (Doc. No. 66 at 19.) Though not explicitly stated in plaintiff's motion, the implication is that the total value of plaintiff's claims as set forth in his motion for preliminary approval included $332,901 for waiting time penalties that he is unlikely to recover. (Doc. No. 61 at 22.) The court is not persuaded that excluding waiting time penalties from the total value of his claims renders the $500,000.00 settlement amount reasonable—12% is not materially different from 11%.

However, as the court mentioned in the order granting preliminary approval of this class action settlement, the lower dollar amount may well be warranted "in light of serious litigation risks faced by plaintiff and the class." (Doc. No. 64 at 9.) While plaintiff calculated the maximum potential exposure to be $4,437,551, this figure assumed a 100% violation rate and did not account for any defenses. (Doc. No. 61 at 22.) The court is persuaded that in addition to the risks that a jury could be persuaded by defendants' interpretation of the policies or that a lesser amount of damages will be awarded, defendants' potential affirmative defense of preemption also poses a serious risk to plaintiff that his claims will fail entirely and he will recover nothing. In this light, a settlement amount that provides for recovery of 11–12% of the total value of the class claims—calculated in best-case-scenario conditions, with no discounts—is reasonable.

Moreover, plaintiff points to the lack of any objections or requests to be excluded from the settlement by class members as further evidence that the settlement amount is fair and reasonable and endorsed by class members. (Doc. No. 66 at 21.) The court addresses this factor below in its discussion of the reaction of class members.

/////

8

After considering the additional arguments put forth by the parties in plaintiff's motion for final approval and at the final approval hearing, particularly the risks to plaintiff's case of defendants successfully asserting the preemption defense—an issue raised for the first time in plaintiff's motion for final approval—the court finds consideration of this factor to weigh in favor of granting final approval.

### 5. Extent of Discovery Completed and Stage of the Proceedings

"In the context of class action settlement, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (quoting *In re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir. 1982)). Approval of a class action settlement thus "is proper as long as discovery allowed the parties to form a clear view of the strength and weaknesses of their case." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013).

As detailed in the court's order granting preliminary approval, the parties in this case completed a sufficient amount of formal and informal discovery for them to make informed decisions about the merits of this case. (Doc. No. 64 at 9.) The court finds that this factor too weighs in favor of granting final approval.

### 6. Experience and Views of Counsel

In the order granting preliminary approval, the court informed the parties that the declaration by plaintiff's counsel, David Mara, had limited value in supporting the adequacy of the settlement agreement. (*Id.* at 10.) At that time attorney Mara did not express a view about the adequacy of the settlement agreement beyond averring that it was reached after a daylong mediation session. (*Id.*)

In support of plaintiff's motion for final approval of the class settlement, however, attorney Mara declares his belief that "this non-reversionary settlement is in the best interests of the class as fair, reasonable, and adequate" and that the settlement "is the product of serious, informed, non-collusive negotiations, has no obvious defects, does not improperly grant preferential treatment to the class representative or segments of the class and falls within the

9

range of fair and reasonable settlements." (Doc. No. 66–1 at ¶ 18.)  Attorney Mara also restates many of the arguments put forth in plaintiff's motion for final approval, including the risks to plaintiff, and declares that "[i]n light of these risks, the Settlement amount is well within the ballpark of reasonableness." (*Id*. at ¶¶ 25–34.)  Attorney Mara further declares that "[t]aking these risks into consideration, the proposed settlement amount of $500,000.00—with an average settlement share amount estimated at $1,963.93[2]—is fair, reasonable, and adequate" and he recommends this settlement.  (*Id*. at ¶ 37.)

After consideration of attorney Mara's experience in employment law and his views on the adequacy of the settlement as expressed in his latest declaration, and consideration of attorney Jamie Serb's experience as expressed at the final fairness hearing, the court finds that consideration of this factor also weighs in favor of granting final approval.

       7.      Presence of a Governmental Participant

There is no governmental participant in this action, so this factor is not at issue.

       8.      Reaction of the Class Members

The absence of objections to a proposed class action settlement supports the conclusion that the settlement is fair, reasonable, and adequate.  *See Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529 ("The absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement.") (citing cases); *Barcia v. Contain-A-Way, Inc.*, No. 07cv938-IEG-JMA, 2009 WL 587844, at *4 (S.D. Cal. Mar. 6, 2009).

As noted above, no class members have objected to the settlement or requested exclusion from the class.  The court also notes that class members will receive a higher individual payment than the original estimates stated in the notices sent to class members, which informed them of their opportunity to object or request exclusion.  This is because the individualized payment estimates included in the notices were calculated based on the estimated net settlement amount of $272,500.00, which accounted for an estimated $75,000 in litigation costs and $20,000 in

---

[2] As explained in plaintiff's counsel's declaration addressing the court's request for additional information regarding mediation costs, the average estimated payment increased to $1,999.86 after the total amount of litigation costs was corrected, thereby increasing the net settlement amount.  (Doc. No. 69 at ¶ 7.)

10

settlement administration costs. (Doc. No. 61 at 17.) Under those original estimates, the average payment was estimated to be $1,632. (*See id*. at 22.) Plaintiff states the net settlement amount is now approximately $333,977.37 because litigation costs totaled $26,526.28 and settlement administration costs totaled $6,996.35. (Doc. No. 69 at ¶¶ 6, 7.) Thus, the settlement is projected to pay class members an estimated average payment of $1,999.86. (Doc. Nos. 66 at 11; 69 at ¶ 7.) Class members will likely react favorably to receiving a higher individual payment than originally estimated.

The lack of objections and requests for exclusion suggests general approval of the settlement as reasonable. Accordingly, the court finds this factor weighs in favor of granting final approval.

In sum, the court finds on balance, and after considering all of the relevant factors, that the settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e).

**ATTORNEYS' FEES, INCENTIVE PAYMENTS, AND COSTS**

In plaintiff's motion for final approval of the class action settlement, plaintiff also requests awards of attorneys' fees, incentive payments, and costs. (Doc. No. 66 at 21.)

**A.  The Requested Attorneys' Fees are Reasonable**

This court has an "independent obligation to ensure that the award [of attorneys' fees], like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). This is because, when fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial." *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010); *In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). As such, the district court assumes a fiduciary role for the class members in evaluating a request for an award of attorneys' fees from the common fund. *In re Mercury*, 618 F.3d at 994; *see also Rodriguez v. Disner*, 688 F.3d 645, 655 (9th Cir. 2012); *West Publ'g Corp.*, 563 F.3d at 968.

The Ninth Circuit has approved two methods for determining attorneys' fees in such cases where the attorneys' fee award is taken from the common fund set aside for the entire settlement:

11

the "percentage of the fund" method and the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citation omitted). The district court retains discretion in common fund cases to choose either method. *Id.*; *Vu v. Fashion Inst. of Design & Merch.*, No. cv 14-08822 SJO (EX), 2016 WL 6211308, at *5 (C.D. Cal. Mar. 22, 2016). Under either approach, "[r]easonableness is the goal, and mechanical or formulaic application of method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002). The Ninth Circuit has generally set a 25 percent benchmark for the award of attorneys' fees in common fund cases. *Id.* at 1047–48; *see also In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."). Reasons to vary the benchmark award may be found when counsel achieves exceptional results for the class, undertakes "extremely risky" litigation, generates benefits for the class beyond simply the cash settlement fund, or handles the case on a contingency basis. *Vizcaino*, 290 F.3d at 1048–50; *see also In re Online DVD-Rental*, 779 F.3d at 954–55. Ultimately, however, "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. The Ninth Circuit has approved the use of lodestar cross-checks as a way of determining the reasonableness of a particular percentage recovery of a common fund. *Id.* at 1050 ("Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable. Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted."); *see also In re Online DVD-Rental*, 779 F.3d at 955.

Here, the court approved plaintiff's request for attorneys' fees on a preliminary basis, finding the requested fee amount of $125,000 was 25% of the settlement amount, and thus in line with the benchmark rate in the Ninth Circuit. (Doc. No. 64 at 13.) The court also previewed that it would determine the reasonableness of the requested amount by cross checking it with the lodestar amount, as recommended by the Ninth Circuit. (*Id.* at 13) (citing *In re Bluetooth*, 654 F.3d at 944).

12

### 1. Percentage of the Common Fund

As noted, plaintiff requests an attorneys' fees award of $125,000, representing 25% of the gross settlement amount of $500,000. In addition to being in line with the benchmark rate, numerous factors support this requested award. This litigation was pursued purely on a contingency-fee basis, with class counsel undertaking representation at their own expense. (Doc. No. 66 at 23.) Class counsel asserts that they "risked not only a great deal of time, but also a great deal of expense" in pursuing this litigation. (*Id*. at 24; *see also Vizcaino*, 290 F.3d at 1048 ("Risk is a relevant circumstance.").) Class counsel spent approximately 271 hours working on this case. (Doc. No. 66 at 26.) Absent successful resolution, none of this attorney time would have been compensated. (*Id*. at 24.) Class counsel incurred over $25,000 in out-of-pocket expenses litigating the case over a three year period. (*Id*. at 27.) Further, class counsel are seasoned, experienced litigators of wage-and-hour class actions. Consideration of each of these factors supports an award of the benchmark rate of 25% for attorneys' fees here.

The absence of any objections to the settlement or requests for exclusions also supports the award of the attorneys' fees sought in this case. The class notices specifically advised class members that class counsel would seek 25% of the gross settlement amount for attorneys' fees, as well as reimbursement for litigation costs. (Doc. No. 66-2 at 10.) Therefore, plaintiff's request for attorneys' fees appears to have the support of the class.

### 2. Cross Check of Lodestar Amount

Where a lodestar is merely being used as a cross-check, the court "may use a 'rough calculation of the lodestar.'" *Bond v. Ferguson Enters., Inc.*, No. 1:09-cv-1662 OWW MJS, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011) (quoting *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM (SHx), 2008 WL 8150856 (C.D. Cal. July 21, 2008)).

Here, class counsel contends that their hourly rates of $400, $500, and $750 for attorneys with two, six, and fifteen years of experience, respectively, are in line with rates approved for wage and hour class action attorneys in this jurisdiction. (Doc. Nos. 66 at 26; 66-1 at 37.) However, those rates are on the high end of, and the partner rate of $750 is well above, the rates that have been employed by judges in this district. The undersigned has previously accepted as

reasonable for lodestar purposes hourly rates of between $370 and $495 for associates, and $545 and $695 for senior counsel and partners. *See Emmons v. Quest Diagnostics Clinical Labs., Inc.*, 1:13-cv-00474-DAD-BAM, at *8 (E.D. Cal. Feb. 27, 2017). Since this hourly rate will be used solely for the purpose of cross-checking the percentage of the common fund awarded as attorneys' fees, the court will not define precisely the appropriate rates for this district. In this regard, the court recognizes some judges in the Eastern District of California have approved similar rates in various class action settings, while others have employed lower rates. *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 452 (E.D. Cal. 2013) (awarding between $280 and $560 per hour for attorneys with two to eight years of experience, and $720 per hour for attorney with 21 years of experience); *Gong-Chun v. Aetna Inc.*, No. 1:09-cv-01995-SKO, 2012 WL 2872788, at *23 (E.D. Cal. July 12, 2012) (awarding between $300 and $420 per hour for associates, and between $490 and $695 per hour for senior counsel and partners). *But see In re Taco Bell Wage and Hour Actions*, 222 F. Supp. 3d 813, 838–40 (E.D. Cal. 2016) (noting that courts in the Eastern District have found $350 to $400 per hour for attorneys with twenty or more years of experience, $250 to $350 per hour for attorneys with less than fifteen years of experience, and $125 to $200 per hour for attorneys with less than two years of experience reasonable); *Reyes v. CVS Pharm., Inc.*, No. 1:14-cv-00964-MJS, 2016 WL 3549260, at *12–13 (E.D. Cal. June 29, 2016) (awarding between $250 and $380 for attorneys with more than twenty years of experience, and between $175 and $300 for attorneys with less than ten years' experience); *Rosales v. El Rancho Farms*, No. 1:09-cv-00707-AWI, 2015 WL 4460635, at *25 (E.D. Cal. July 21, 2015) (awarding between $175 and $300 per hour for attorneys with less than ten years of experience and $380 per hour for attorneys with more than twenty years' experience); *Schiller v. David's Bridal, Inc.*, No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001, at *22 (E.D. Cal. June 11, 2012) (awarding between $264 and $336 per hour for associates, and $416 and $556 per hour for senior counsel and partners).

/////
/////
/////

Applying class counsel's hourly rates results in a lodestar fee of $151,900[3]. (Doc. No. 66 at 26.) Attorney Mara's lodestar is $73,500 (98 hours x $750/hr); attorney Serb's lodestar is $46,000 (92 hours x $500/hr); attorney Roberts's lodestar is $32,400 (81 hours x $400/hr). (*See* Doc. No. 66–1 at 37.) Even if the court were to calculate the lodestar based on a reduced hourly rate for partners of $695, the lodestar fee would be $146,510. With either lodestar calculation, the lodestar amount is more than the requested attorneys' fees amount of $125,000 sought here. Thus, the cross check supports this court's determination that the amount requested for fees is reasonable.

Therefore, considering the lodestar cross-check and the fact that this case was conducted purely on a contingency fee basis, the court approves an award of $125,000 in attorneys' fees, equal to 25 percent of the common fund.

**B.     Litigation Expenses are Reasonable**

In addition to the fee award, plaintiff's counsel requests an award for the out-of-pocket expenses incurred in litigating this case. (Doc. No. 66 at 27.) Expense awards "should be limited to typical out-of-pocket expenses that are charged to a fee paying client and should be reasonable and necessary." *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007). These can include reimbursements for "(1) meals, hotels, and transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing fees; (5) messenger and overnight delivery; (6) online legal research; (7) class action notices; (8) experts, consultants, and investigators; and (9) mediation fees." *Id*.

/////

/////

/////

/////

/////

---

[3] Class counsel asserts that the lodestar is $153,150, (Doc. No. 66 at 26), but that figure appears to be based on an incorrect calculation of attorney Mara's lodestar as $74,750, which would reflect an hourly rate of $762, not $750. (Doc. No. 66–1 at 37.)

Plaintiff's counsel seeks reimbursement of the actual litigation costs and expenses incurred, totaling $26,526.28.[4] (Doc. Nos. 66 at 27; 69 at ¶ 6.) Counsel has submitted a list of itemized costs for expenses such as court fees, copying, postage, experts, court reporters, travel, and mediation fees. (Doc. No. 66–1 at ¶ 19, Ex. 2.) The court finds these expenses appropriate and will award counsel $26,526.28 in litigation costs.

### C. The Requested Incentive Payment is Reasonable

"Incentive awards are fairly typical in class action cases." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). However, the decision to approve such an award is a matter within the court's discretion. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). Generally speaking, incentive awards are meant to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. The Ninth Circuit has emphasized that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives . . . . [C]oncerns over potential conflicts may be especially pressing where, as here, the proposed service fees greatly exceed the payments to absent class members." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (internal quotation marks and citation omitted). A class representative must justify an incentive award through "evidence demonstrating the quality of plaintiff's representative service," such as "substantial efforts taken as class representative to justify the discrepancy between [her] award and those of the unnamed plaintiffs." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal.

---

[4] Plaintiff's counsel initially sought reimbursement of costs totaling $32,526.28, which included mediation fees of $15,500. (Doc. No. 66 at 27.) At the final approval hearing, the court expressed concern that $15,500 for one party's equal share of a single day of mediation seemed unreasonably high and asked plaintiff's counsel to provide additional information on this point. Plaintiff's counsel thereafter filed a declaration explaining that mediation fees for a canceled mediation were inadvertently included in the motion's request. (Doc. No. 69 at ¶ 3.) The actual mediation costs were $19,000 total, with plaintiff incurring a charge of $9,500.00 for his half. (*Id*. at ¶ 5.) The corrected total costs are therefore $26,526.28. (*Id*. at ¶ 6.) Thus, and as indicated above, plaintiff's counsel now estimates the net settlement amount at $333,977.37, and the average estimated payment has increased from $1,963.93 to $1,999.86. (*Id*. at ¶ 7.)

2008). Incentive awards are particularly appropriate in wage-and-hour actions where a plaintiff undertakes a significant "reputational risk" by bringing suit against their former employers. *Rodriguez*, 563 F.3d at 958–59. The district court must evaluate their awards individually, using "'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'" *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Here, the named plaintiff, John Martin, seeks an incentive payment of $7,500.00 for his service as a class representative in this action. (Doc. No. 66 at 28.) The requested award amounts to 1.5 percent of the gross settlement amount, which the court noted is in line with other incentive awards that have been approved by the undersigned. (Doc. No. 64 at 14.) The court found the requested amount to be reasonable and approved the incentive award on a preliminary basis, inviting plaintiff to provide evidence that the requested award is warranted here in moving for final approval. (*Id*. at 14.) Plaintiff's counsel has declared that "this case would not have reached the same result but for plaintiff's involvement and input at all stages of the litigation" (Doc. No. 66–1 at ¶ 42), that plaintiff faced the risk of having to pay a large cost bill if defendants were to prevail, (*id*. at ¶¶ 43–44), and that plaintiff undertook a reputational risk that may harm his future employment opportunities (*id*. at ¶ 46). As a result of plaintiff's efforts, the settlement reached provides significant monetary benefits for the class with payments averaging $1,999.86 per class member. (*Id*. at ¶ 47; Doc. No. 69 at ¶ 7.)

For his part, plaintiff has submitted a declaration describing the many meetings and conversations he had with counsel regarding his work as a driver for defendants, his rights and remedies, defendants' rest and break policies, and defendants' pay system. (Doc. No. 66–3 at ¶¶ 4–5, 12.) Therein, plaintiff also declared that he understood filing a class action may subject him to a stigma and may compromise his future employment opportunities, and despite being nervous about these potential negative consequences, he was not afraid to stand up for what he believed was right. (*Id*. at ¶¶ 7–8.) Plaintiff does not specify the amount of time he spent in

17

connection with this litigation, but he does represent that he had his deposition taken in Sacramento, CA and he met with his attorneys multiple times for many hours to prepare for that deposition. (*Id*. at ¶ 10.) At the final approval hearing, counsel represented to the court that plaintiff's deposition lasted several hours. Plaintiff also attended the settlement conference in Fresno, CA and declined defendants' offer for an individual settlement because he did not think it was in the best interests of the class. (*Id*. at ¶ 11.) Plaintiff responded to defendants' interrogatories and document requests, which included discussing his responses with his attorneys and reviewing the final responses to ensure accuracy. (*Id*. at ¶ 14.) Although plaintiff did not attend the private mediation, he was available by phone and he helped his attorneys prepare for the mediation by reviewing defendants' time sheets, pay records, and policies. (*Id*. at ¶¶ 15, 19.)

In light of the supporting evidence submitted in this regard, the court finds the requested incentive payment of $7,500 is fair and does not destroy the adequacy of class representation in this case.

### D. Settlement Administrator Costs are Reasonable

The court previously approved the appointment of ILYM Group Inc. to serve as the settlement administrator. (Doc. No. 64 at 15.) The court also noted that the amount ILYM estimated for its expenses (not to exceed $20,000.00) was comparable to payments approved by this court in prior cases. (*Id*. at 15.) ICLYM has filed a declaration with the court indicating that its costs incurred-to-date as well as its anticipated costs for completion of the settlement administration totals $6,996.35. (Doc. No. 66–2 at ¶ 14.) The court finds these costs reasonable and will direct payment in the requested amount.

### CONCLUSION

For the reasons stated above:

1. Plaintiff's motion for final approval of the class action settlement (Doc. No. 66) is granted and the court approves the settlement as fair, reasonable, and adequate;
2. Plaintiff's request for attorneys' fees and costs, an incentive payment, and settlement costs (Doc. No. 66) is granted, and the court awards the following sums:

|   |   |    |
|---|---|----|
| 1 |   | a. Class counsel shall receive $125,000 in attorneys' fees and $26,526.28 in costs; and |
| 3 |   | b. Named plaintiff John Martin shall receive $7,500.00 as an incentive payment; |
| 5 |   | c. The settlement administrator, ILYM Group Inc., shall receive $6,996.35 for settlement administration costs; |

3. The parties are directed to effectuate all terms of the settlement agreement (Doc. No. 61-2) and any deadlines or procedures for distribution therein;
4. This action is dismissed with prejudice in accordance with the terms of the settlement agreement, with the court specifically retaining jurisdiction over this action for the purpose of enforcing the parties' settlement agreement; and
5. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **December 17, 2019**   /s/ Dale A. Drozd
UNITED STATES DISTRICT JUDGE